STATE EX REL. STATE BAR OF WISCONSIN, Respondent, v. BONDED COLLECTIONS, INC., and another, Appellants.

*October 30—November 28, 1967.*

For the appellants there were briefs by *Murphy, Huiskamp, Stolper, Brewster & Desmond* of Madison, and oral argument by *Robert B. L. Murphy.*

For the respondent the cause was argued by *Warren H. Resh* of Madison of counsel, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Charles A. Bleck,* assistant attorney general, attorneys, and *John B. McCarthy* of Madison, also of counsel.

Briefs *amici curiae* were filed by *Geisler & Kay* and *Robert J. Kay,* all of Madison, for the Wisconsin Collectors Association, Inc., and by *Francis J. Wilcox* of Eau Claire, for the Eau Claire County Bar Association.

HEFFERNAN, J. Inasmuch as the plaintiffs have demurred to the answer and affirmative defenses of the defendants, we, for the purposes of this appeal, take the allegations of the defendants, together with those allegations of the plaintiff's complaint that are uncontroverted, as verities.

It appears that Bonded is a licensed collection agency which solicits accounts for collection from the public. Bonded at its initial contact with a creditor makes no arrangements to proceed with a lawsuit or to advance costs.

Only after nonlitigative attempts at collection have failed does Bonded advise a creditor that the account cannot be collected except by starting a lawsuit. At that juncture Bonded and the creditor proceed to institute legal actions, either by assigning the account or by entering into an agency agreement.

If after notifying the creditor that the account is uncollectible except by suit, the assignment procedure is used, Bonded advises the creditor that it will accept the assignment of the account for collection and agrees with the creditor that, if a lawsuit is begun, the proceeds of the suit will first be charged with the court costs and the proceeds remaining will be divided between the creditor and Bonded according to a fixed percentage. Bonded acknowledges that on some assigned claims it hires attorneys who bring suit in the name of Bonded, and that such attorneys make court appearances and prepare and file whatever legal documents are appropriate. It is acknowledged that, where an assignment is taken, no attorney-client relationship is established between the creditor and the attorney.

In some instances, by means that are not clear from the pleadings, Bonded is appointed as agent of the creditor for purposes of prosecuting a lawsuit in the name of the creditor. Under these circumstances, the attorney, although appearing in the name of and on behalf of the creditor, acts under the immediate instruction of Bonded.

The State Bar alleges that during the period from May, 1962 to July 21, 1965, over 1,000 legal actions were instituted by Bonded in various courts on accounts and claims, and during the period from July 1, 1964, to July 21, 1965, over 630 actions were instituted in the small claims court of Eau Claire county, and that those actions constituted 65 percent of all actions filed in that court during the period alleged. While Bonded admits that a number of actions were started by Bonded or its attorney during the period stated, it denies any knowledge of the

exact number brought or the percentage that such actions constituted of the claims filed in the Eau Claire court.

All court appearances, however, are made by licensed attorneys.

## I.

### *Effect of legislative action or administrative rules on right of defendants to carry on particular collection practices.*

The action that is brought by the State Bar is to enjoin the unauthorized practice of law. While the defendant has cited several legislative enactments and administrative rules that are designed to set standards of business conduct and to prohibit practices that may result in injury to creditors and the public, these rules do not purport to authorize a course of conduct that would constitute the practice of law. We have pointed out that the legislature has the authority to place additional penalties upon those who engage in the unauthorized practice of law. In *State ex rel. Reynolds v. Dinger* (1961), 14 Wis. 2d 193, 203, 109 N. W. 2d 685, we stated:

"Other branches or departments of government by statute, rule, or regulation may aid but not thwart the court in its exercise of the court's constitutional powers. For an example of aid, see sec. 256.30 (1), Stats., . . . imposing penalties for practicing law without a license. For an example of an attempt to thwart the court see the statute in the *Cannon Case* . . . . the legislature . . . may not obstruct the court in its own exclusive sphere . . . ."

In that same case we concluded that the preparation of a few documents incident to the sale of real estate, as permitted by the rule of the real estate brokers board, though constituting the limited practice of law, would not be prohibited by this court. However, we made it clear

that no rule or practice, however venerable, would preempt the exclusive authority of the judicial branch of government to define and regulate the practice of law. We said:

"We conclude that Rule, sec. REB 5.04, includes provisions which permit to a limited extent the practice of the law by certain nonlawyers; that the regulation of the practice of the law is a judicial power and is vested exclusively in the supreme court; that the practitioner in or out of court, licensed lawyer or layman, is subject to such regulation; that whenever the court's view of the public interest requires it, the court has the power to make appropriate regulations concerning the practice of law in the interest of the administration of justice, and to modify or declare void any such rule, law, or regulation by whomever promulgated, which appears to the court to interfere with the court's control of such practice for such ends." (p. 206.)

In *State ex rel. State Bar v. Keller* (1962), 16 Wis. 2d 377, 386, 114 N. W. 2d 796, 116 N. W. 2d 141, we stated:

"The legislature's creation of the public service commission with its rule-making powers does not in any way supersede the exclusive power of the judiciary, ultimately residing in the supreme court, to determine what is or is not the practice of law and to restrict such practice to persons licensed by the court to engage in it."

In *Drugsvold v. Small Claims Court* (1961), 13 Wis. 2d 228, 108 N. W. 2d 648, this court reiterated its concern for the problem of unauthorized practice of law by collection agencies, making it clear that it was the court's conclusion that the determination of whether collection practices used by certain agencies was unauthorized practice of law was a matter for the judicial branch of government.

We conclude that neither the legislature, nor any of its creatures, in contravention of the exclusive power of the judiciary, may authorize the performance of legal services by nonlawyers either directly or indirectly, nor

may it authorize a lay agency, though acting through the media of licensed lawyers, to carry on a course of conduct that this court defines as legal work or the practice of law.

## II.

*Does a course of conduct whereby a collection agency takes assignments of accounts for collection, furnishes an attorney, brings suit in its own name, and then pursuant to a prior agreement deducts from the proceeds, costs, and a fixed percentage as its fee and remits the balance to the creditor, constitute the unauthorized practice of law.*

One of the techniques regularly used by Bonded in acquiring standing to sue is to secure an assignment from the creditor. The pleadings of the defendants reveal that, after dunning efforts have proved unsuccessful, they advise the creditor that the account cannot be collected except by starting a lawsuit. The creditor is then advised that the collection agency will accept an assignment of the account for collection. An assignment for collection is taken and an agreement is reached that proceeds of the lawsuit will be charged first with the costs of the action, and the remainder then divided between the creditor and the agency in accordance with an agreed percentage. Bonded commences actions in its own name, using duly licensed attorneys to prosecute the action. The attorney hired by Bonded prepares all legal documents and files all necessary papers in court. Appearances are made only through attorneys. The attorney general takes the position this constitutes the unauthorized practice of law.

The appellants acknowledge that there is no lawyer-client relationship between the creditor and the attorney,

but contend that this is irrelevant because case law since the time of *Wooliscroft v. Norton* (1862), 15 Wis. 217 (\*198), has recognized that an assignee of an account for collection is the real party in interest and may sue on an assignment. This no doubt is the law, but the appellants then conclude that, since the assignment confers standing to sue, it also confers the status of client upon the assignee, thus permitting a proper lawyer-client relationship to spring up between the collection agency and its lawyer. The last conclusion is a *non sequitur*, for the purpose of the real-party-in-interest statute [1] is procedural only. Clark, *Code Pleading* (2d ed., hornbook series 1947), p. 160, sec. 22, defines the real party in interest "is he who by substantive law has the right of action."

The purpose of the real-party-in-interest statute is to prevent a multiplicity of suits, to make sure that a defendant can assert his defenses when sued upon an assigned claim, to assure that a judgment will completely settle the claim, and to make it possible to discharge the debt by paying the assignee with no vestigial right of action remaining in the assignor.

To test whether a party is the real party in interest, it is necessary to look to the effect of litigation in which the person claiming to be the real party in interest appears.

"In ascertaining whether the plaintiff is the real party in interest, the primary and fundamental test to be applied is whether the prosecution of the action will save the defendant from further harassment or vexation at the hands of other claimants to the same demand. If the defendant is not cut off from any just defense, offset, or counterclaim against the demand and a judgment in behalf of the party suing will fully protect him when dis-

[1] Sec. 260.13, Stats., provides:

"**Real party in interest must prosecute.** Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15."

charged, then is his concern at an end." 2 Bancroft, *Code Practice and Remedies,* p. 1094, sec. 749.

An assignee for collection meets that test.

In Pomeroy, *Code Remedies* (5th ed.), p. 106, sec. 70, it was said:

"Analogous to the subject discussed in the preceding paragraph is the question whether an assignee, to whom a thing in action has been transferred by an assignment which is absolute in its terms, so as to vest in him the entire legal title, but which, by means of a contemporaneous and collateral agreement, is, in fact, rendered conditional or partial, is the real party in interest. It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds, 'and is to account to the assignor or other person for the residue, or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional' does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. The debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account. This is the settled doctrine in most of the States."

It is apparent that the principal motivation for the conclusion that the assignee for collection is the real party in interest was concern for the procedural reform of our court system to avoid endless lawsuits. It is also apparent that the drafters of the code sought to protect debtors from endless harassment.

For procedural purposes an assignee of a claim for collection is, indeed, the real party in interest, but his in-

terest is a limited one. The assignment confers upon him only a naked legal title, but the beneficial or equitable interest remains in the assignor. 6 C. J. S., *Assignments*, p. 1151, sec. 94. Thus, the beneficial owner of the chose in action is not the collection agency but the creditor. It is most inappropriate for the defendants to gain procedural standing to sue by complying with the what is somewhat inappropriately in this context known as the real-party-in-interest statute and then assert that because the assignee is the real party in interest in the procedural sense it stands in all respects in the shoes of the creditor. This is not the fact. The true client, the party whose right of action is at stake in the lawsuit, remains the creditor.

A similar contention was disposed of in *Bay Bar Asso. v. Finance System, Inc.* (1956), 345 Mich. 434, 438, 76 N. W. 2d 23:

". . . the real party in interest statute was enacted to protect a defendant from being harassed repeatedly by a multiplicity of suits for the same cause of action, but that when a defendant's rights are fully protected in the litigation and judgment against him therein will stand as a conclusive adjudication of the rights in controversy and a bar to any further suit by another party, the purpose of the statute has been served. We held, accordingly, that because the plaintiff in *Kearns* had an assignment such that satisfaction of a judgment obtained thereon by him would discharge the defendant from his obligation to the assignor, plaintiff was the real party in interest within the meaning and for the purpose of the statute and, hence, could maintain his suit against any objection by defendant on that score. *To hold, however, that a plaintiff meets the test of the real party in interest statute is a far cry from holding that, in bringing such suit, he is not engaging in the unauthorized practice of law in violation of CL 1948, sec. 601.61 (Stat. Ann. sec. 27.81); CL 1948, sec. 450.681 (Stat. Ann. sec. 21.311)."* (Emphasis supplied.)

The defendants admit, when they acknowledge the proceed-splitting arrangement, that the creditor retains an

interest in the subject matter of the lawsuit. The fact is that it retains the entire interest in the amount due subject to the percentage of the amount collected that the collection agency claims as its costs and fees. It is sheer hypocrisy to conclude that the percentage retained by the collection agency represents its equity or ownership share of the claim. It is its fee or charge for professional services rendered. Under these circumstances the property right of the creditor is directly affected and his recovery is dependent upon the litigation undertaken. There is no doubt that the client whose interests must be served and represented in the suit for collection under a normal and lawful lawyer-client relationship is the creditor.

Thus we have a situation where the defendants, La Belle, the individual, and Bonded Collections, Inc., the corporation, advise the creditor when to start a lawsuit. Upon taking a limited assignment the defendants hire an attorney who, at their direction, commences suit. The direction of lawsuit, defendants admit, is vested in them not in the creditor who is the true client. If the suit is successful, the collection agency pockets a fee for services rendered. We conclude that habitual conduct of this nature for a fee constitutes the practice of law.

It is apparent that Bonded and its officers intervene between the true client and usurp his position in the management of the suit, and usurp the position of the lawyer in advising the client that suit is appropriate. By so doing, the collection agent sells the creditor the services of a lawyer, whom it controls and directs. Though the cause asserted is in fact the creditor's, there is privity only between the lawyer and the collection agency. The collection agency by going into court representing itself as the client perpetrates a fraud on the court. The vice of this procedure is that the collection agent, ostensibly as the client when he is not, directs the services of a lawyer. Moreover, the duty and allegiance of the lawyer is thus diverted and owed, as a result of this arrange-

ment, not to the true client, the creditor, but to the intervening corporation to whom he owes his employment fee. When one who is not the actual client, but on the strength of an assignment for collection purports to act as such, advises the true creditor of the necessity for suit and also directs an attorney in the initiation, conduct, and termination of a lawsuit he is practicing law. He is offering in the market the services of an attorney to the creditor and he is furnishing legal services when he is not authorized by law to do so. When this is done in the usual and habitual course of business, as it is concededly done by the defendants La Belle and Bonded Collections, Inc., it constitutes the unauthorized practice of law. *Bump v. District Court* (1942), 232 Iowa 623, 5 N. W. 2d 914; *Bump v. Barnett* (1944), 235 Iowa 308, 16 N. W. 2d 579; and *Bay Bar Asso. v. Finance System, Inc.* (1956), 345 Mich. 434, 76 N. W. 2d 23.

The following well-reasoned paragraph from *Nelson v. Smith* (1944), 107 Utah 382, 394, 154 Pac. 2d 634, 157 A. L. R. 512, makes it clear that our concern in this case is not with the conduct of an attorney who may be hired but is with the unauthorized practice of law by La Belle and the corporation.

"The fact that the defendants in some instances employ a regularly licensed attorney to prepare necessary legal papers and conduct the trial of a suit does not make their conduct legal. One cannot do through an employee or an agent that which he cannot do by himself. If the attorney is in fact the agent or employee of the lay agency, his acts are the acts of his principal or master. When an attorney represents an individual or corporation, he acts as a servant or agent. Since he acts for others in a representative capacity, doing those things which are customarily done by an attorney, he practices law within the meaning of Section 6–0–24. The same conduct on the part of laymen would likewise be the practice of law, and since said layman would be unlicensed, such practice would be illegal. The prohibition against the practice of law by a layman contained in Section 6–0–24 applies alike to the practice by a layman

directly and in person and to the indirect practice through an agent or employee. It is immaterial that said layman may select duly licensed attorneys as his agents or employees through whom he practices law. If the attorney be in fact the agent or employee of a layman, his act is that of the layman (his principal). Such principal would be engaging in the illegal practice of law if he through such an agent rendered legal services to a third party for compensation and as a regular and customary business practice."

In the case of *In re Disbarment of George H. Otterness* (1930), 181 Minn. 254, 257, 232 N. W. 318, 73 A. L. R. 1319, a similar question was raised and the court concluded:

"But neither a corporation nor a layman not admitted to practice can practice law nor indirectly practice law by hiring a licensed attorney to practice law for others for the benefit or profit of such hirer. For this bank to employ defendant to conduct law business generally for others for the benefit and profit of the bank amounted to the unlawful practice of law by the bank . . . ."

Admittedly the parties to this litigation are correct when they advert to the ethical considerations that are raised by these practices. Those considerations, however, are peripheral to the issues in the case before the court.

*Does the collection agency engage in the unauthorized practice of law when it acts as the agent of the creditor in hiring a lawyer.*

Appellants take the position that there is neither impropriety nor unauthorized practice of law when they act as the agent of the creditor to hire an attorney to handle a lawsuit. They assert that under those circumstances a relationship of lawyer-client is established between the creditor and the attorney hired by the collection agency. The trial court did not disagree with that general proposition, stating:

"The Court finds nothing inherently wrong in the creditor engaging an agent for the purpose of selecting an attorney for him. Various rules have been propounded from time to time to control this arrangement and it is not here intended to adopt any such set of rules, beyond the conclusion that an agent, to lawfully engage an attorney for a principal, must be acting with the specific authority of his principal, and in the process of engaging such an attorney must be certain that he sets up a true attorney-client relationship between the attorney selected and the creditor. It would also preclude the collector from the management of the litigation and decisions necessary thereto."

Respondent also concedes that there is a difference between assigned claims upon which suit is brought by the defendants' attorneys and claims which are forwarded by the agency to an attorney with the consent and direction of the creditor.

We conclude that a transaction which results in a true lawyer-client relationship between an attorney and the creditor following the selection of the lawyer obviates the unauthorized-practice problem.

However, the rationale set forth in the discussion of assigned claims above is equally pertinent here. Thus, it must be clear to the lawyer that his client is the creditor, not the agency that appointed him, and that if he requires any direction or guidance in the handling of the suit it can come only from the client with whom he is free to communicate. Moreover, the lay agent that appointed him cannot assume the direction of either the policy or the details of the litigation—to do so is to usurp a prerogative reserved to the client alone. Nor is the attorney to look to the agency for his fees. This is the responsibility of the client.

While in the instant case appellants deny that there is not a lawyer-client relationship between the lawyer and creditor and affirmatively allege that appearances are on behalf of the creditor, they also allege that the attorney

appears under "the immediate instruction of the defendant corporation in the latter's capacity as agent of such creditor."

The latter allegation nullifies an indispensable requisite of the lawyer-client relationship—that no person other than the client direct the attorney in the management of the lawsuit. Such direction of litigation, though as an agent for client, constitutes the unauthorized practice of law if such an agency agreement is not casual, but is done as a regular and usual procedure in the business of collecting claims for others. Admittedly, this is the case here, and the defendants are engaged in the unauthorized practice of law in so doing.

*Are the activities of the defendants in hiring or appointing counsel to conduct litigation for creditors constitutionally protected.*

There remains the constitutional question raised by *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar* (1964), 377 U. S. 1, 84 Sup. Ct. 1113, 12 L. Ed. 2d 89, rehearing denied 377 U. S. 960, 84 Sup. Ct. 1625, 12 L. Ed. 2d 505. It is defendants' position that the first and fourteenth amendments, as interpreted in *Brotherhood,* preclude the State Bar and this court from constitutionally controlling the activities of defendants.

In *Brotherhood,* the United States Supreme Court held that members of the union were asserting rights guaranteed them by the first and fourteenth amendments in the operation of a lawyer referral service. To assist the prosecution of claims by injured railway workers, the Brotherhood maintained both in Virginia and throughout the United States a department of legal counsel, which recommended to its members and families of deceased workers names of lawyers whom the Brotherhood believed to be honest and competent. The Supreme Court of Appeals of Virginia affirmed the injunction granted

by the lower court restraining the union from channeling the claims of the workers to lawyers chosen by the legal department. The supreme court reversed. The court recognized the fact that a state has broad powers to regulate the practice of law within its borders provided that such regulation did not trammel the rights of individuals secured by the constitution. The court delineated the right of the Brotherhood members:

"The right of members to consult with each other in a fraternal organization necessarily includes the right to select a spokesman from their number who could be expected to give the wisest counsel. That is the role played by the members who carry out the legal aid program. And the right of the workers personally or through a special department of their Brotherhood to advise concerning the need for legal assistance—and, most importantly, what lawyer a member could confidently rely on—is an inseparable part of this constitutionally guaranteed right to assist and advise each other." (p. 6.)

Concluding that these rights were protected by the first amendment, the court stated:

"In the present case the State again has failed to show any appreciable public interest in preventing the Brotherhood from carrying out its plan to recommend the lawyers it selects to represent injured workers. The Brotherhood's activities fall just as clearly within the protection of the First Amendment. And the Constitution protects the associational rights of the members of the union precisely as it does those of the NAACP.

"We hold that the First and Fourteenth Amendments protect the right of the members through their Brotherhood to maintain and carry out their plan for advising workers who are injured to obtain legal advice and for recommending specific lawyers." (p. 8.)

The failure of the state to establish that the public interest necessitated regulation of the referral plan was critical. The public interest with which the supreme court was concerned is exemplified by the following language:

"Here what Virginia has sought to halt is not a commercialization of the legal profession which might threaten the moral and ethical fabric of the administration of justice. It is not 'ambulance chasing.' The railroad workers, by recommending competent lawyers to each other, obviously are not themselves engaging in the practice of law, nor are they or the lawyers whom they select parties to any soliciting of business." (pp. 6, 7.)

The element of commercialization or the profit motive distinguishes *Brotherhood* from the case at bar. The trainmen's brotherhood received no remuneration for the referral services offered. Clearly, Bonded Collection, Inc., and Norman La Belle participate in the fruits of their collection efforts. The same rationale appears in *NAACP v. Button* (1963), 371 U. S. 415, 83 Sup. Ct. 328, 9 L. Ed. 2d 405, where the supreme court upheld a system whereby that association advised prospective litigants to seek the assistance of particular attorneys:

"There has been no showing of a serious danger here of professionally reprehensible conflicts of interest which rules against solicitation frequently seek to prevent. This is so partly because no monetary stakes are involved, and so there is no danger that the attorney will desert or subvert the paramount interests of his client to enrich himself or an outside sponsor." (pp. 442, 443.)

Moreover, in *Brotherhood* it was apparent that a direct attorney-client relationship existed between the lawyer and the client. Brotherhood acted only as a referral agent, having no control over the litigation. In the instant case the collection agency controls the litigation.

Appellants' claim that *Button* and *Brotherhood* afford a constitutional shield to their mercenary activities is without merit.

*By the Court.*—The order sustaining the respondent's demurrer to the answer and affirmative defense is affirmed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

HANSEN, J., took no part.