514 P.2d 40

STATE of New Mexico ex rel. David L. NORVELL, Plaintiff-Appellant and Cross-Appellee,

v.

CREDIT BUREAU OF ALBUQUERQUE, INC., Defendant-Appellee and Cross-Appellant.

No. 9448.

Supreme Court of New Mexico.

Sept. 7, 1973.

David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Jr., Asst. Atty. Gen., Santa Fe, Charles DuMars, Sp. Asst. Atty. Gen., Albuquerque, for plaintiff-appellant.

Ahern, Montgomery & Albert, Albuquerque, for defendant-appellee.

Peter B. Shoenfeld, Santa Fe, amicus curiae on behalf of Unauthorized Practice of Law Committee of the State Bar of New Mexico.

Gerald D. Cole, Albuquerque, amicus curiae.

## OPINION

STEPHENSON, Justice.

This litigation had its inception in a suit filed by Eva A. Sanchez against the Credit Bureau of Albuquerque, Inc. (Credit Bureau) alleging that she had been sued and garnished by the Credit Bureau which was unlawfully practicing law, and seeking a money judgment. Subsequently other litigation was filed by persons in like circumstances in which similar contentions were advanced. There were interventions by certain members of the bar. The state intervened, seeking declaratory and injunctive relief. The cases were consolidated and submitted on stipulated facts. The trial court denied certain relief from which the state appeals and granted other relief from which the Credit Bureau cross appeals. None of the individual supposed debtors of the Credit Bureau have appealed.

Certain procedural questions are in need of resolution. The Credit Bureau argues that the members of the bar, Messrs. J. Michael Norwood and Richard T. Mosher, Jr., who have attempted to appeal are not proper parties for a variety of reasons. We agree, on the grounds that their notice of appeal is deficient. It merely states that they "hereby file their notice of appeal to the Supreme Court of the State of New Mexico." Supreme Court Rule 5(5) [§ 21–2–1(5)(5), N.M.S.A.1953] provides that the notice of appeal "shall designate the judgment, order or part thereof appealed from." We have gone rather far in according a liberal construction to that rule. Nevarez v. State Armory Board, 84 N.M. 262, 502 P.2d 287 (1972). So has the Court of Appeals. Westbrook v. Lea General Hospital, 85 N.M. 191, 510 P.2d 515 (Ct.App.1973). This notice falls short of compliance with the rule, however construed, and we hold that Messrs. Norwood and Mosher are not parties to this appeal.

The Credit Bureau in a motion and in the first point of its cross appeal asserts that the attorney general is not a proper party because:

A. The intervention was not timely. It occurred about a year and one-half after commencement of the litigation, after diverse proceedings and after another motion for intervention had been denied as untimely.

B. It was prejudiced because the attorney general is attorney for the Collection Agency Board [§ 67–15–22 et seq., N.M.S.A.1953] and, as found by the court, it "has made a good faith attempt to operate within * * * the Collection Agency Board's regulations."

C. The attorney general was estopped from intervening because the Credit Bureau was acting in conformity with and in reliance upon attorney

**524**

general's Opinion No. 69–12 of February 19, 1969, and the policies and procedures of the Albuquerque Magistrates adopted in conformity with that opinion.

Shortly stated, we are of the opinion that none of these assertions are meritorious, but the argument points up a party question. Is the intervenor the State of New Mexico or its attorney general? The pleadings, decision, judgment—in fact the entire record—display a certain ambivalence as to the identity of this intervenor. The same is true of the briefs. Apparently neither the parties nor the court had this matter clearly in mind, and since no particular point was made of it, on occasions the state would be spoken of as being the party and on others its attorney general.

The attorney general has no common law powers or duties. State v. Reese, 78 N.M. 241, 430 P.2d 399 (1967). So far as we are here concerned, his duties are statutory. § 4–3–2, N.M.S.A.1953 (Supp.1971). A careful reading of that statute convinces us that the attorney general is thereby cast in the role of attorney for the State of New Mexico, and that the latter is the proper party litigant rather than the former.

The complaint in intervention is captioned "State ex rel. David Norvell, Attorney General," etc. The notice of appeal recites that "the plaintiff, State of New Mexico," appeals. Thus, whatever confusion may have existed during the course of the proceedings, the beginning and end seem to be in order. We will consider.that the state is the party.

Ms. Martha Duncan, an employee and agent of the Credit Bureau, was originally a party defendant. She was a lay person who was manager of the Credit Bureau's collection service division. The case was voluntarily dismissed with prejudice as to her.

The parties to this appeal are therefore the State and the Credit Bureau.

The essential facts are not disputed. The Credit Bureau is a New Mexico corporation, licensed and authorized to do business under the Collection Agency Act [§§ 67–15–22 to 67–15–89, N.M.S.A.1953]. One of its principal purposes is the solicitation of claims for collection. The claims are taken pursuant to an agreement between the creditor and the Credit Bureau. The agreement states that fees paid to the Credit Bureau are contingent upon collection and require the creditor to assign his claim to the Credit Bureau when requested to do so.

During the collection process, but prior to the institution of any litigation, letters approved by the Collection Agency Board, which was established pursuant to the Collection Agency Act, supra, are sent to the debtor by employees of the Credit Bureau who are not lawyers.

When collection efforts short of litigation fail, the Credit Bureau then so informs the creditor, advises him that legal action will be necessary and procures from the creditor an assignment of the claim for the purpose of allowing the Credit Bureau to file suit in its own name. No monetary consideration is paid for this assignment and the contingency fee relationship remains the same. The Credit Bureau does not advise creditor-assignors that they may seek an attorney of their choice. The Credit Bureau does not introduce a creditor-assignor to the attorney for the Credit Bureau for the purpose of establishing an attorney-client relationship between the assignor and the Credit Bureau's attorneys. The decision that a lawsuit is the only remaining method available for collection of a claim is made solely by the Credit Bureau, not its attorneys. The Credit Bureau, acting without its attorneys, controls the entire litigation in magistrate court in some cases.

The Credit Bureau's employees prepare a form answer to be served on the defendant along with a copy of the complaint. The jury demand section of the form answer was, as a matter of practice, crossed out,

until this was brought to the attention of Credit Bureau attorneys.

If a defendant files his own answer in magistrate court, the Credit Bureau's collection manager appears at the trial on the merits to litigate the case for the Credit Bureau. The collection manager examines witnesses, questions the defendant and generally presents the Credit Bureau's case. However, if an attorney answers or appears for the defendant in magistrate court, the Credit Bureau has its attorneys litigate the case on the merits. These attorneys are paid a set fee for each appearance. When the Credit Bureau decides that suit should be filed in the District Court of Bernalillo County, the files are referred to its attorneys on a contingency fee basis. If a judgment is collected in such a suit, the creditor-assignor receives an agreed percentage. The Credit Bureau, who solicited the account for collection, divides its percentage with its attorneys. The Credit Bureau advances the filing and service fees when a lawsuit is filed by the Credit Bureau on a claim assigned to it on a contingency fee basis.

We will first consider the correctness of the injunctive relief granted below. The judgment provided, inter alia:

"(3) The Credit Bureau of Albuquerque, Inc. be and hereby is permanently enjoined from the following activities which constitute the unauthorized practice of law:

The preparation of pleadings, orders, judgments or appearing in Magistrate Court on behalf of an individual, partnership, corporation, association or group of any kind, on a recurring or consistent basis irrespective of whether payment or other consideration, direct or indirect, is involved."

The Credit Bureau's cross appeal is directed to this portion of the judgment. It attacks the trial court's finding number twenty-six which is of sufficient consequence to be quoted in its entirety as follows:

"In appropriate circumstances the preparation of pleadings, orders, judgments, and court appearances are permitted: (1) by individual persons appearing pro se (2) by a nonlawyer in an isolated instance, assisting an individual person appearing pro se, and with permission of the court (3) by a law student pursuant to Rule 94, Rules of Civil Procedure. There may be other circumstances not covered by the foregoing, e. g., 'guardhouse lawyers' preparing and filing briefs for prison inmates less familiar with criminal law. Subject to these exceptions, the applicable statute, rules, and decisions do not authorize such activities by non-lawyers, acting for or on behalf, of an individual, partnership, corporation, association, or group of any kind, on a recurring or consistent basis, irrespective of whether payment or other consideration, direct or indirect, is involved. Such activities constitute the unauthorized practice of law."

The Credit Bureau also attacks the trial court's conclusion to the effect that the injunctive relief we have described should be granted.

The trial court had reference to § 18–1–26, N.M.S.A.1953 which provides in part:

"No person shall practice law in any of the courts of this state, except courts of justice of the peace nor shall any person commence, conduct or defend any action or proceeding in any of said courts unless he be an actual and bona fide resident of the state of New Mexico, and unless he shall have first obtained a temporary license as herein provided, or shall have been granted a certificate of admission to the bar under the provisions of this chapter. No person not licensed as provided herein shall advertise or display any matter or writing whereby the impression may be gained that he is an attorney or counselor at law, or hold himself out as an attorney or counselor at law, * * *"

■ Moreover, this court possesses the inherent constitutional power to grant or

to withhold the rights of admission to the practice of law in this state. Application of Sedillo, 66 N.M. .267, 347 P.2d 162 (1959). This power extends to the fact situation here presented.

■ We have declined to define what constitutes the practice of law because of the infinite number of fact situations which may be presented, each of which must be judged according to its own circumstances. In Sparkman v. State Board of Bar Examiners, 77 N.M. 551, 554, 425 P.2d 313, 315 (1967) we said:

"We do not propose to submit a definition of the practice of law that may be employed to fit all situations and activities. We consider that each case must be examined in the light of its own facts."

See Harty v. Board of Bar Examiners, 81 N.M. 116, 464 P.2d 406 (1970).

■ While adhering to what we said in Sparkman and Harty, nevertheless we recognize that indicia of the practice of law, insofar as court proceedings are concerned, include the following: (1) representation of parties before judicial or administrative bodies, (2) preparation of pleadings and other papers incident to actions and special proceedings, (3) management of such action and proceeding, and non-court related activities such as (4) giving legal advice and counsel, (5) rendering a service that requires the use of legal knowledge or skill, (6) preparing instruments and contracts by which legal rights are secured. 7 Am.Jur.2d Attorneys at Law, § 73; Annot., 151 A.L.R. 781. Denver Bar Association v. Public Utilities Commission, 154 Colo. 273, 391 P.2d 467, 13 A.L.R.3d 799 (1964); Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977 (1937).

■■ We entertain no doubt as to the correctness of the portion of the judgment which grants injunctive relief. The same or similar questions have been considered in a number of other jurisdictions. Oft cited cases are Nelson v. Smith, 107 Utah 382, 154 P.2d 634 (1944) and Bump v. Bar-

nett, 235 Iowa 308, 16 N.W.2d 579 (1944). The Nelson court held that an assignee is the real party in interest even though the assignment is only for the purpose of suit. But the court went on to state:

"* * * this holding is not determinative of this point. Before one may proceed in the courts to prosecute a claim in which another has a beneficial interest it must be determined whether or not the assignment was made to accomplish an illegal purpose. Section 6–0–24 prohibits the practice of law by laymen. The courts themselves will not permit laymen to appear in court in a representative capacity. The policy of the courts and the legislature in this regard may not be circumvented by the subterfuge of a layman taking an assignment to permit him to carry on the *business* of practicing law.

"The casual assignment for procedural convenience falls in an entirely different class. See comment in Graustein v. Barry, 315 Mass. 518, 53 N.E.2d 568. The casual assignment does not constitute a business of collecting claims for others. Rather such assignments are made for procedural and administrative convenience and permit groups of persons collectively to pursue a similar or common right. There may well be legitimate purposes for the taking of an assignment by one engaged in the business of collecting claims for others. But collection agencies as a part of their business of serving others, clearly should not be permitted to prepare legal papers, commence suits, appear in court, prepare judgments and generally manage law suits for its various customers. * * * It does not matter what particular form or name they give their procedure the practice of furnishing or performing legal services for another is essentially the same.

"When the defendants solicit the placement of claims with them for collection, they are asking third parties to allow them to render the service of collecting

the claim. At that time the collection agency has absolutely no interest, either legal or beneficial, in the claim. The only interest they ever get comes by virtue of a promise to prosecute the claim. Courts cannot remain blind to the fact that the assignment of the claim to the defendants for collection is not made as a gratuity. The percentage of the amount collected which is allowed to the defendants is given to them for one purpose only; to compensate them for services rendered in the collection thereof. Where the collection practice involves the preparing of legal papers, furnishing legal advice and other legal services, the compensation allowed must be assumed to be in part allowed to pay for the legal services so rendered. No matter how one looks at it, this constitutes the rendering of legal services for others as a regular part of a business carried on for financial gain. This essential fact cannot be hidden by the subterfuge of an assignment. The assignment itself, if used to permit this practice, is for an illegal purpose and one proceeding under such an assignment is not protected by the constitutional provision giving one the right to appear for the purpose of prosecuting or defending a cause to which he is a party." (Citations omitted.)

The court further held that the collection agency's use of attorneys in some cases was not a vindicating circumstance:

"* * * it is clear that any attorney furnished to perform the legal services which the defendants agree, as a usual business practice, to perform or cause to be performed would be the employee of the defendants. There would, under these circumstances, be no contract or privity between the owners of the various claims and the attorneys furnished by the defendants. The fee allowed by the owners of the claims to compensate defendants for the services rendered are deducted by the defendants for their own use and benefit. The services so ren-dered are such as are usually and customarily rendered by an attorney in the practice of his profession. Under the allegations any attorney retained to perform such services in the enforcement of such claims would be the defendants' employee or agent. Such a business conducted for the purpose of bringing legal actions on claims owned by third parties and consisting of the payment of all costs and the furnishing of all legal services incident to the bringing of the actions is the practice of law. Where, as here, the agency rendering the service is a lay agency, it is the illegal practice of law. Such is the almost uniform holding of the authorities as applied to collection agencies operating along similar lines." (Citations omitted.) Nelson v. Smith, 107 Utah 391, 397, 154 P.2d 638, 641.

Bump v. Barnett, supra, dealt with a collection agency which solicited claims for collection, brought suit on the claims as assignee, and prepared and submitted the necessary legal instruments in some cases and retained a lawyer in others. The court's analysis was similar to that of the court in Nelson:

"The legality of assignments of choses in action with right of the assignee to litigate same in his own name, the right of a party to try his own case in any court and the fact that appearance by agent in justice court is permitted under our statute, are not questioned here. What is questioned is the right of defendant to hold himself out as one specially equipped to render services requiring special legal training and knowledge and the right to make a business of habitually rendering such services under the claimed protection of these propositions.

"Take first the right of assignment and of the assignee to bring action in his own name on the assigned chose. The Carson Pirie Scott case [Carson Pirie Scott & Co. v. Long, 222 Iowa 506, 268 N.W. 518 (1936)] fairly illustrates an exercise of these rights. It did not in-

volve in any way a practice by plaintiff of soliciting claims for litigation or collection, of holding itself out as able to repossess property, or of contracting for the conduct of litigation. Plaintiff in that case was one of several creditors of the defendant. The claims of the others were assigned to plaintiff so all could be sued on in one action. It reveals a legitimate exercise of the statutory powers referred to above.

"Other examples could no doubt be imagined. Undoubtedly one might for example engage in the business of buying claims as investments and might take assignments of them to himself and maintain actions thereon in his own name. But when he does not purchase the claims and only takes colorable assignment of them so he may render or cause to be rendered legal service to others and holds himself out as engaged in such practice, it is a quite different matter. In one case he is dealing in property on his own account, in the other he is selling service and merely adopting the guise of an investor to conceal the real nature of his operations.

"And so with the right of a plaintiff to try his own lawsuit in any court. If it is really his own litigation the right is unquestioned and unquestionable. But if it is another's lawsuit or action, placed in plaintiff's name so as to enable him to render service to that other under the pretext of trying his own case, it does not come under the protection of the rule. And if it is done by one who engages in it as a business and holds himself out as peculiarly qualified or equipped, it comes under the ban of illegal practice of law.

"So likewise with the argument that because our statute, section 10526, Code 1939, provides that in justice court either party may appear 'in person or by agent,' defendant is thereby permitted to engage in the practice regularly of representing clients in justice courts. The conclusion does not logically follow. The salutary purpose of the statute may not thus be perverted to encourage the growth of a class of 'justice court lawyers,' unfettered by the rules that bind licensed attorneys and without training in law and ethics. Such rules are just as important in justice courts as in courts of record —more important, perhaps, because the justice of the peace is often one untrained in such matters—and certainly such safeguards are not less important by reason of the fact, if it be a fact, that justice courts are 'poor men's courts.' The poor man is entitled to the same professional service as are more favored litigants." Bump v. Barnett, 235 Iowa 308, 312, 16 N.W.2d 579, 582.

See also Bay County Bar Association v. Finance System, 345 Mich. 434, 76 N.W.2d 23 (1956); State v. James Sanford Agency, 167 Tenn. 339, 69 S.W.2d 895 (1934), and State v. Bonded Collections, Inc., 36 Wis.2d, 643, 154 N.W.2d 250 (1967).

Andrus v. Guillot, 160 So.2d 804 (La. App.1964); In re Shoe Mfrs. Protective Ass'n, 295 Mass. 369, 3 N.E.2d 746, 106 A. L.R. 1333 (1936); State v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895 (1937); State v. Merchants' Credit Service, 104 Mont. 76, 66 P.2d 337 (1937) overruled on other grounds, Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060 (1941) reach conclusions similar to the cases we have discussed by interpreting statutes defining the practice of law.

The Credit Bureau argues that § 18–1–26, N.M.S.A.1953, in prohibiting unlicensed persons from practicing law "in any of the courts of this state except courts of justice of the peace," coupled with the provisions of § 36–1–38, N.M.S.A.1953 which provides that "whenever the term 'justice of the peace' may be used in the laws, it shall be construed to refer to the magistrate courts" means that unlicensed persons may practice in magistrate courts. This argument fails to take into account that the regulation of the practice of law is the exclusive constitutional prerogative of this court. Application of Sedillo, su-

pra. If the cited statutes were construed as the Credit Bureau would have us do, they would be unconstitutional. It is reasonable to construe the statutes to mean that it is not unlawful for an unlicensed person to appear in magistrate courts, under, for example, the situations outlined in the trial court's finding number twenty-six which we have quoted, on a casual and non-recurring basis without the contaminating aspects of solicitation and charging of fees. We will not permit the practice of law by unlicensed magistrate courts' lawyers who are unfettered by the strictures which apply to the rest of the legal profession.

Where statutes may be construed in alternate ways one of which would result in the statutes being constitutional and the other being unconstitutional the former construction will be applied. Amador v. New Mexico State Board of Education, 80 N.M. 336, 455 P.2d 840 (1969); State ex rel. Lee v. Hartman, 69 N.M. 419, 367 P.2d 918 (1961).

■ The Credit Bureau also contends that §§ 67–15–72 and 67–15–73, N.M.S.A. 1953 provide an administrative remedy for persons aggrieved by the conduct of collection agencies and that the Uniform Licensing Act at § 67–26–26, N.M.S.A.1953, requires that all questions concerning collection agencies are to be initially decided by the Collection Agency Board. Therefore, it is asserted that plaintiffs must exhaust these administrative remedies. This argument is specious. Bearing in mind that the issue is whether the Credit Bureau is engaged in the unlawful practice of law, the query arises as to what possible effect any action or decision of the Collection Agency Board might have. Whether its response to the issue was yea or nay, it would be ruling upon an issue which falls exclusively within the purview of the courts.

■ The doctrine of exhaustion of remedies does not require the initiation of and participation in proceedings in respect to which an administrative tribunal clearly lacks jurisdiction, or which are vain and futile. See Pan American Petroleum Corp. v. El Paso Nat. Gas Co., 77 N.M. 481, 424 P.2d 397 (1966); Sandia Savings and Loan Association v. Kleinheim, 74 N.M. 95, 391 P.2d 324 (1964).

Mr. Cole in his excellent brief amicus curiae expresses concern lest the trial court's decision be interpreted to hold that pro se appearances in magistrate courts by unlicensed lay persons are unlawful, and advances powerful and persuasive arguments why such appearances are not unlawful. Indeed, the last two sentences of the trial court's finding number twenty-six that we have quoted might be susceptible to such an interpretation, but only if isolated from the stipulated facts, the other findings and the judgment.

Notwithstanding the contention of the state that the court erred in not concluding that corporations cannot appear pro se, we want to make it clear that the question of pro se appearances, whether by an individual, partnership, corporation, association or group of any kind, and whether on an isolated or recurring basis, is not before the court for decision. By nothing which we say, nor which the trial court said, is there any intention of holding pro se appearances to constitute unlawful practice of law. Such appearances are entirely foreign to the issues presented here. In fact, the very basis of what we have said thus far is that the Credit Bureau is not appearing pro se but is rather rendering a service to others.

The portion of the judgment granting injunctive relief is affirmed.

We come now to consideration of the issues presented by the appeal which primarily involve the action of the trial court in denying certain injunctive or declaratory relief in the following terms:

"(1) That the plaintiffs' request for an injunction against the Credit Bureau of Albuquerque, Inc., enjoining it from soliciting assignments of claims on a contingency fee basis, and filing suit there-

on on the same contingency fee basis by its own attorneys in its own name in any of the Courts of the State of New Mexico, be and hereby is denied."

■ We are of the opinion that in this trial court erred. Under the facts stipulated and found by the trial court, even where court proceedings are initially handled by Credit Bureau attorneys, there is still the element of solicitation and the charging of compensation for legal services by the Credit Bureau. The fact that it elects to use its own attorneys from inception is in itself control of the litigation. We reach this decision largely on the basis of the same rationale followed in affirming the trial court's granting of injunctive relief. Both Nelson v. Smith, supra, and Bump v. Barnett, supra, support this result. The assignments procured by the Credit Bureau were not in truth taken for the purpose of acquiring title and ownership, but rather to facilitate the furnishing of legal services for a consideration.

State v. Bonded Collections, Inc., supra, was a case in which the collection agency used a lawyer exclusively when legal proceedings were called for, which is the fact situation involved in the court's denial of the relief under discussion. The collection agency urged that inasmuch as the assignment made it the real party in interest, it also conferred the status of client on the assignee, permitting a proper attorney-client relationship to spring up between it and its lawyer. The Wisconsin court rejected this argument, holding that although the collection agency was the real party in interest within the meaning of the procedural statutes, the assignment conveyed only a naked legal title and the true client whose right of action was at stake remained the creditor. The court went on to say:

"The defendants admit, when they acknowledge the proceed-splitting arrangement, that the creditor retains an interest in the subject matter of the lawsuit. The fact is that it retains the entire interest in the amount due subject to the percentage of the amount collected that the collection agency claims as its costs and fees. It is sheer hypocrisy to conclude that the percentage retained by the collection agency represents its equity or ownership share of the claim. It is its fee or charge for professional services rendered. Under these circumstances the property right of the creditor is directly affected and his recovery is dependent upon the litigation undertaken. There is no doubt that the client whose interests must be served and represented in the suit for collection under a normal and lawful lawyer-client relationship is the creditor.

"Thus we have a situation where the defendants, La Belle, the individual, and Bonded Collections, Inc., the corporation, advise the creditor when to start a lawsuit. Upon taking a limited assignment the defendants hire an attorney who, at their direction, commences suit. The direction of lawsuit, defendants admit, is vested in them not in the creditor who is the true client. If the suit is successful, the collection agency pockets a fee for services rendered. We conclude that habitual conduct of this nature for a fee constitutes the practice of law." (Citations omitted.) State v. Bonded Collections, Inc., supra, 36 Wis.2d at 653, 154 N.W.2d at 255.

We have arrived at our decision that the trial court erred in denying the relief under discussion with a certain hesitancy and reluctance. We are mindful that we live in a credit oriented economic system. It is vital that practical means be available to those who extend credit to enforce collection of lawful obligations. Otherwise, the burden must be borne by consumers who meet their obligations in the form of higher prices. Yet the creditors often lack the knowledge and skills, as well as the time to pursue collection.

The legal profession has largely priced itself out of the market so far as handling small collections on a case by case basis is concerned, and the state has now successfully stricken down collection practices of long standing. We have recognized this

dilemma in other areas. For example, the court through its rule making power has effected certain modifications of the Code of Professional Responsibility so as to permit arrangements for prepaid legal services under certain circumstances. Supreme Court Rule 32, § 21–2–1(32), N.M.S.A. 1953. It may be that lawful ways will be found to facilitate the presentation of claims of business, professional and other creditors in magistrate courts on some group basis. By nothing we have said do we intend to hold that all such arrangements are unlawful. Our holding is limited to the issues of this case. We simply say that the arrangements disclosed by the findings here constitute the unlawful practice of law.

 Finally the state contends that certain letters sent by the Credit Bureau to its patrons' debtors constitute the unlawful practice of law because certain statements were made as to the effects of judgments and the like. The state asserts that the trial court erred in refusing to so find.

The letters in question were written and used prior to any resort to the courts. It was only after the letters had proven unavailing that court proceedings were had. Moreover the statements were not made by the Credit Bureau to its patrons but rather to its adversaries, and we agree with the trial court that they did not constitute the giving of legal advice and hence the unlawful practice of law. The letters were not above reproach in certain aspects, literary and otherwise, but if they are violative of the Collection Agency Act other means are available to deal with that problem.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the District Court of Bernalillo County for further proceedings consistent with the views we have expressed.

It is so ordered.

OMAN and MARTINEZ, JJ., concur.