575 P.2d 943

The STATE BAR of New Mexico, the San Juan County Bar Association, the Unauthorized Practice of Law Committee of the San Juan County Bar Association, John Cain, Joseph A. Palmer and C. C. Koogler, Plaintiffs-Appellees,

v.

GUARDIAN ABSTRACT AND TITLE COMPANY, INC., a corporation, and San Juan County Abstract and Title Company, a corporation, Defendants-Appellants.

No. 11213.

Supreme Court of New Mexico.

March 14, 1978.

Sommer, Lawler & Scheuer, Thomas A. Simons, IV, Santa Fe, for defendants-appellants.

C. Clement Koogler, Aztec, John D. Cain, Flora Vista, Joseph A. Palmer, Farmington, for plaintiffs-appellees.

Thomas S. Jackson, Patricia D. Curne, Washington, D. C., amicus curiae NM Land Title Association & American Land Title Association.

## OPINION

EASLEY, Justice.

The State Bar Association, the San Juan County Bar Association, a committee of the San Juan County Bar and three lawyers as plaintiffs-appellees (collectively designated herein as State Bar) brought this suit to enjoin Guardian Abstract & Title Company, Inc. and San Juan County Abstract and Title Company, defendants-appellants (hereinafter Guardian Abstract) from engaging in the unauthorized practice of law. The District Court of San Juan County found for the State Bar and issued an injunction against Guardian Abstract. Guardian Abstract appeals. We reverse on the issue of filling in the forms and affirm as to the issue of giving legal advice.

It is claimed by Guardian Abstract that none of the plaintiffs is properly a party to the action. The principal question, however, is whether Guardian Abstract's longstanding practice, in closing real estate sales or loan transactions, of using non-lawyers to fill in the blanks on standard printed or retyped forms of deeds and several other instruments constitutes the unauthorized practice of law.

Guardian Abstract adduced testimony that abstract and title companies in San Juan County handled approximately ninety percent of the real estate loan closings in that county at the time of trial and that they have been performing the acts complained of for approximately twenty years. It was further claimed by Guardian Abstract that the Bar Association knew for a period of at least sixteen years that Guardian Abstract and others had been performing the same services that the Bar Association now asserts are unauthorized.

Guardian Abstract states that, in order to close the loans, it is necessary for them to fill in the printed forms; that the company does not charge for this service; that they do not advertise or hold themselves out as being capable of filling in form instruments or giving legal advice; that they handle the closing of real estate sales only as incident to the insuring of title to the property; that the title companies are guided by a code of ethics; and that they fill in the blanks on instruments because it is faster, more efficient and less expense for the parties than using attorneys to fill in the blanks. They allege that the attorneys at times are slow in preparing instruments; that the title companies do not give legal advice; and that attorneys are seldom present to answer questions by the parties to the sale, even though the attorneys make up the instruments. Guardian Abstract denies giving any legal advice about joint-tenancy deeds and asserts that if a question is asked about the use of the form, Guardian Abstract simply advises the person that if one party dies, the other party takes the realty or, in the alternative, Guardian Abstract refers the party to the definition in the statutes. Guardian Abstract calls attention to the fact that the State Bar and the Realtors Association of New Mexico entered into a statement of principles on June 26, 1957, in which the State Bar conceded that realtors could fill in the identical forms they now contend the title companies cannot fill in.

They claim that neither the plaintiffs nor the public have been, or will be, irreparably harmed by the activities of Guardian Abstract and other title companies.

On the other hand, the State Bar contends that Guardian Abstract and other title companies, by selecting the forms to be used and preparing them, necessarily judge the legal sufficiency of the instruments to

accomplish the wishes of the parties and that their use of judgment constitutes the practice of law.

### Proper Parties to Bring Action

Guardian Abstract has raised numerous objections directed to the authority and the standing of the various plaintiffs to bring this suit. We do not attempt to answer all the issues raised, considering the disposition we make of the case.

There are a myriad of cases, annotations, law review articles and text materials relating to who may properly bring suits to enjoin the unauthorized practice of law by lay persons. It would unduly lengthen this opinion to analyze all the various principles of law and the varied ways in which the courts have applied them.

Sections 18-1-2, et seq., N.M.S.A. 1953 recognize the existence of a state bar. Section 18-1-6, N.M.S.A. 1953 says that the Board of Bar Commissioners has "the power to make and enforce rules . . . generally for the control and regulation of the board and of the state bar."

Rule 3 [§ 18-1-6, N.M.S.A. 1953, Rules Governing the Committee on Unauthorized Practice of Law, Board of Bar Commissioners of the State Bar of New Mexico, Rule 3] states that the Unauthorized Practice Committee "may institute and prosecute suits to * * * prevent the unauthorized practice of the law." If the state bar can delegate authority to the committee to bring suit it must first have the power to do so itself.

■ As used in the statute, the state bar is a generic term referring to that group of attorneys who have been admitted to practice before the courts of this state. An integrated state bar, such as ours, comes into being by the Supreme Court's action in admitting the attorneys to practice and needs no separate statutory authorization to create it.

■ A state bar, even though it is not a corporate "person," may have conferred upon it by statute the power to bring suits to prevent the unauthorized practice of law to protect both itself and the public. Our

statutes creating the Board of Bar Commissioners and giving it power to "make *and enforce*" rules "generally for the control and regulation of * * * the state bar," § 18-1-6, *supra*, must necessarily give it the power to seek the court's help to prevent the *unauthorized* practice of law. Otherwise, it would have no way to control the authorized practice of law. *In re Baker*, 8 N.J. 321, 85 A.2d 505, 511-12 (1951); *Lamb v. Whitaker*, 171 Tenn. 485, 105 S.W.2d 105 (1937). We read the words "control * * of the state bar" liberally in order to give some reasonable meaning to § 18-1-6. It makes little sense to create a commission with the power to "determine and prescribe by rules the qualifications and requirements for admission to the practice of law" and the power to "enforce" those rules and then say the commission is not empowered to seek the court's help to enjoin those who ignore and violate those rules.

The Board of Bar Commissioners correctly interpreted the mandate of § 18-1-6 when it created the Committee on Unauthorized Practice of Law and, by rule, gave it the power to "institute and prosecute suits * * * to suppress, prohibit, or prevent the unauthorized practice of the law." Unauthorized Practice Rule 3, *supra*.

The courts have broadly construed state bar acts, recognizing state bars as essentially public institutions and generally allowing the organizations to maintain suits in equity. It appears quite obvious that the integrated bar composed of all attorneys within the state, is the best informed, most responsible, and most interested party to initiate these actions. Local bar associations are also fully informed and properly qualified parties to bring such suits to guard against unauthorized practice.

All attorneys admitted to practice before the courts are officers of the court and hold a unique position as agents of the court to help it insure that the law is upheld and the unauthorized practice of law prevented. *Conway-Bogue Realty Inv. Co. v. Denver Bar Ass'n*, 135 Colo. 398, 312 P.2d 998 (1957). When a suit is brought by an individual attorney representing the public in

an injunctive procedure there must necessarily be a more substantial showing of interest by the complaining attorney. Suit by an individual attorney must be regarded as the product of necessity. A state bar association or local bar association is better equipped to combat unauthorized practice. It is better, however, to permit suits by individual attorneys than to permit unauthorized practice to continue.

It is generally held throughout the country that the power to control admissions to the bar and to discipline members of the bar is inherent in the judiciary. This power would be meaningless if laymen might practice law with impunity. Such power necessarily carries with it the power to prevent laymen from practicing law. Vanderbilt, C. J., *In re Baker, supra,* 85 A.2d at 512.

■ We agree with the court in *Conway-Bogue, supra,* that, although normally for a court to grant an injunction, an imminent threat of irreparable harm must be shown, where the action is in behalf of the public and is an action to restrain an unlicensed person from practicing the profession, it is not necessary to prove irreparable injury. *Id.* at 1004.

■ Nor again must the plaintiff in such an action show an individual property or pecuniary interest in the case where the action is in behalf of the public. This is true because licensed attorneys and their organizations have an interest in the nature of a property right in the practice of their profession such as would support the authority of an individual licensed attorney, for the benefit of himself and all other attorneys similarly situated and on behalf of the public and the courts, to bring such a suit as a proper party plaintiff. *Dworken v. Apartment House Owners Ass'n of Cleveland,* 28 Ohio N.P. (n.s.) 115 (1930), *aff'd,* 38 Ohio App. 265, 176 N.E. 577 (1931). *See generally* Annot., 90 A.L.R.2d 7, § 11 at 63 (1963).

■ We hold that the Board of Bar Commissioners and the Committee on Unauthorized Practice of Law are both empowered by statute to maintain and prosecute suits to prevent the unauthorized practice of law. Clearly if these subdivisions of the state bar have power to bring such suits, the integrated Bar of New Mexico may sue on behalf of the public to protect it from such practice. Under circumstances where suit is not entered by the Bar Association or its branches and it becomes necessary for individual attorneys to act in the public interest, the individuals have standing to bring action. We find it unnecessary in this case to decide the issue of standing as regards the individual attorneys here involved.

### Purpose of Regulation

■ The prime purpose of licensing attorneys and in making them the exclusive practitioners in their field is to protect the public from the evils occasioned by unqualified persons performing legal services. *Gardner v. Conway,* 234 Minn. 468, 48 N.W.2d 788 (1951). The close regulation of those who practice law is to protect the unwary and the uninformed from injury at the hands of persons unskilled or unlearned in the law. *New Jersey State Bar Ass'n v. Northern N. J. Mtg. Assoc.,* 22 N.J. 184, 123 A.2d 498 (1956).

The confining of law practice to a licensed bar to protect the public is of ancient origin and is of the utmost importance in today's complicated society. *Gardner, supra.* The court in *Gardner* sets forth three requirements for licensing: ability, character, and responsible supervision and states at 795:

> The public welfare is safeguarded not merely by limiting law practice to individuals who are possessed of the requisite ability and character, but also by the further requirement that such practitioners shall thenceforth be officers of the court and subject to its supervision.

This inherent supervisory jurisdiction of the court includes the power to remove attorneys from the profession who are unfaithful or incompetent in the discharge of their public trust.

However, the attorneys have a vital stake in the process. Professional standards must be flexible and adaptable to changed conditions, but there must also be sufficient stability to protect the lawyers in the practice of their profession. If this is not done, it would be less likely that persons of character and ability would spend the years of intensive preparatory training to acquire the skill and proficiency to become lawyers. *Gardner, supra.*

### Power to Regulate

■ The authority of the Supreme Court to define and regulate the practice of law is inherently contained in the grant of judicial power to the courts by the Constitution. *In re Patton*, 86 N.M. 52, 519 P.2d 288 (1974); *State ex rel. Norvell v. Credit Bur. of Albuquerque, Inc.*, 85 N.M. 521, 514 P.2d 40 (1973); *State v. Childe*, 139 Neb. 91, 295 N.W. 381 (1941).

■ It is necessary that the judicial department be the sole arbiter of what constitutes the practice of law. *Lowell Bar Ass'n v. Loeb*, 315 Mass. 176, 52 N.E.2d 27 (1943).

### Defining Practice of Law

There is no comprehensive definition of what constitutes the practice of law in our basic law or the cases. This Court has specifically declined to take on the onerous task. In *State ex rel. Norvell, supra*, 85 N.M. at 526, 514 P.2d at 45, this Court stated:

> We have declined to define what constitutes the practice of law because of the infinite number of fact situations which may be presented, each of which must be judged according to its own circumstances.

*Accord, Harty v. Board of Bar Examiners*, 81 N.M. 116, 464 P.2d 406 (1970); *Sparkman v. State Board of Bar Examiners*, 77 N.M. 551, 554, 425 P.2d 313, 315 (1967).

The court in *State ex rel. Norvell* further stated, 85 N.M. at 526, 514 P.2d at 45, that, inter alia, "rendering a service that requires the use of legal knowledge" or "preparing instruments and contracts by which legal rights are secured" would be indicia of the practice of law. That case, however, involved a credit bureau which was taking assignments of accounts and was filing suit in magistrate courts to collect. It did not concern the mere filling in of blanks on form deeds and other instruments. Left unexplained in that case is the question of what constitutes the "preparing" of instruments.

Defining the practice of law is an extremely difficult task, which we find unnecessary to undertake at this time. The line between what constitutes practicing law and what is permissible business and professional activity by non-lawyers is indistinct. *New Jersey State Bar Ass'n v. Northern N. J. Mtg. Assoc.*, 32 N.J. 430, 161 A.2d 257 (1960).

■ The answer may be determined only from a consideration of the acts or service performed in each case. Generally, in cases like this the courts hold that whenever, as incidental to another transaction or calling, a layman, as part of his regular course of conduct resolves legal questions for another at his request and for a consideration by giving him advice or by taking action for and in his behalf, the layman is "practicing law," but only if difficult or doubtful legal questions are involved, which, to safeguard the public, reasonably demand the application of a trained legal mind. *Gardner, supra.* What is a difficult or doubtful question of law demanding the application of a trained legal mind is not to be measured by the comprehension of a trained legal mind but by the understanding thereof which is possessed by a reasonably intelligent layman who is reasonably familiar with similar transactions.

The test must be applied in a common-sense way which will protect primarily the interest of the public and not hamper or burden such interest with impractical and technical restrictions which have no reasonable justification. *Gardner, supra.*

We make our decision within the narrow parameters of the facts of this case. The evidence shows the use of statutory forms, forms prepared by lawyers only, or which

are used in conjunction with the closing of government-insured loans. The trial court found that Guardian Abstract was giving advice about the legal effect of using certain forms and was choosing forms for its patrons.

We first must consider the paramount interest of the public in determining who should perform the service of completing the forms. There was no convincing evidence that the massive changeover in the performance of this service from attorneys to the title companies during the past several years has been accompanied by any great loss, detriment or inconvenience to the public. The uncontroverted evidence was that using lawyers for this simple operation considerably slowed the loan closings and cost the persons involved a great deal more money.

We must assume that the State Bar was acting in the public interest twenty years ago when that group agreed that realtors were to be given the right to complete form instruments, some of them almost identical to the ones here involved.

The members of the San Juan County Bar had known of the questioned practice for sixteen years, according to the evidence, but had not taken court action to stop the practice. If the acts of Guardian Abstract initially amounted to the unauthorized practice of law and were continued over such a long period of time, it would not preclude this Court from proscribing the conduct at this time. *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 366 P.2d 1 (1961), *modified on other grounds*, 91 Ariz. 293, 371 P.2d 1020 (1962). However, the fact that the practice became a long-standing custom without court action being taken by the attorneys is a circumstance to be considered in appraising whether the practice was of any great harm to the public. If dire consequences were being suffered by the citizens, it could be expected that the officers of the court would step forward to rectify the wrong.

It seems eminently clear that it would be a burden on the public for us to now decree that such acts constitute the unauthorized

practice of law. We would be asserting impractical and technical restrictions that have no reasonable justification.

■ We hold that filling in blanks in the legal instruments here involved, where the forms have been drafted by attorneys and where filling in the blanks requires only the use of common knowledge regarding the information to be inserted, does not constitute the practice of law. But, we further hold that, when the filling in of the blanks affects substantial legal rights, and if the reasonable protection of such rights requires legal skill and knowledge greater than that possessed by the average citizen, then such practice is restricted to members of the legal profession. *State ex rel. Norvell, supra; State v. Sperry*, 140 So.2d 587 (Fla.1962), *reversed on other grounds*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).

The forms involved here are: statutory forms for warranty deed, special warranty deed, mortgage, release and partial release of mortgage; forms for right-of-way easement, promissory note, VA and FHA mortgages and notes, HVD disclosure-settlement, lender's mortgage and note, affidavits as to debts and liens, lien waiver and surveyor's affidavit.

■ Exercising a legal judgment as to which competing form to use or giving advice about the legal effect of executing a joint-tenancy deed, or any other of the instruments involved here, constitutes the unauthorized practice of law. *Conway-Bogue, supra.*

■ Although it is claimed that no charge was made for the services in question here, we feel it important to state that the making of separate additional charges to fill in the blanks would be considered the "practice of law," for the reason that it would place emphasis on conveyancing and legal drafting as a business rather than on the business of the title company. *Hulse v. Criger*, 363 Mo. 26, 247 S.W.2d 855 (1952).

■ A layman, regardless of whether he is expert at closing loans, may not hold

himself out to the public as an expert or consultant in this field or describe himself by any similar phrase which implies that he has a knowledge of the law. *Gardner, supra.*

We further hold that persons working for title companies who confer with parties to obtain facts and information about their personal and property status, who obtain more information than that necessary to fill in the blank spaces in standardized forms used for company purposes, and who use the information instead for the purpose of advising the parties of their rights and the action to be taken concerning them, are engaging in the "practice of law."

We reverse in part and affirm in part, as indicated above. The case is remanded to the district court for actions not inconsistent herewith.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA, PAYNE and FEDERICI, JJ., concur.