[No. 3134. Feb. 24, 1928.]

EL BOLETIN POPULAR PUB. CO. v. SPRINGER
et al.

[265 Pac. 713.]

276

· Renehan & Gilbert, of Santa Fe, for appellants.

J. O. Seth and C. R. McIntosh, both of Santa Fe, for appellee.

OPINION OF THE COURT

WATSON, J. In August, 1922, El Boletin Popular Publishing Company and Taos Printing & Publishing Company were corporations, each publishing a newspaper or newspapers and carrying on a printing business, at Taos. They sold and transferred to three trustees their respective plants, businesses, good will, and the right to the use of the names of' the papers. The uses and purposes set forth were: To consolidate and administer the printing and publishing business of- the corporations; to do and perform any and all acts and things necessary or proper in connection with the business; to render a report on August 1 each year to each of said corporations, showing receipts and disbursements; to divide the net profits, if any; and to "conduct the newspapers published under the terms of. this indenture as Republican papers." The three trustees were to have succession as follows: In case, of the death or resignation of Ramon Sanchez, his successor should be appointed by El Boletin Popular Publishing Company; the successor of Malaquis Martinez was to be appointed by Taos Printing & Publishing Company; and the successor of Charles Springer by the Republican state central committee. It was provided that, "unless otherwise determined or extended by mutual agreement of said corporations and the trustees, the term of duration of the trust estate created shall be 25 years from the date hereof."

The trustees received the property so conveyed, consolidated the businesses, and proceeded to administer the trust agreement and estate. March 17, 1924, El' Boletin Popular Publishing Company commenced this suit against Springer and Martinez, surviving trustees, and Taos Printing & Publishing Company, as defendants. The complaint set up the agreement just mentioned, the tak-

ing and retention of possession of the property, and the death of Sanchez, one of the trustees. It prayed for an accounting by the trustees; for a receiver to take over the property of the trust estate and administer it under control of the court; that the trustees be removed, the trust agreement set aside, and the property distributed between the two corporations. As grounds for this relief, it was alleged that the trustees had failed to submit any reports; that they had disposed of large quantities of the property of El Boletin Popular Publishing Company, and used the proceeds for the payment of debts of the Taos Printing & Publishing Company; had negligently administered the trust, by permitting large quantities of the property to remain unprotected from the elements and from theft, and permitting it to be utterly destroyed by weather and theft; that they had permitted the newspapers under their direction to print libelous articles, subjecting the trustees and the trust estate to damage suits in large amounts; and that the attempted trust arrangement was ultra vires of both corporations.

By his petition in intervention Jose Montaner alleged that about March 17, 1925, but without any knowledge or notice of the pendency of the present suit, he had entered into a lease with the trustees for the property involved, pursuant to the terms whereof he had taken possession of the property and had expended large sums of money. By the terms of the lease Montaner agreed to carry on the business, and from the receipts, if sufficient, and, if insufficient, at his own cost, to pay all expenses, including not to exceed $125 per month for editing and management, saving the trustees harmless from liability for any such expense. He agreed to account to the trustees at the end of each quarter and to pay over one-half the net profits; to edit and publish the newspapers as Republican papers; to publish no libelous matter, and to save the trustees and the trust estate harmless in respect to any such matter; not to transfer the lease, nor turn over said property without written consent of the trustees; and that he might, if the trustees should first agree thereto in writing, add, at his own cost, new equipment or machinery, and charge rental therefor, as expense of

operation; and that any failure by him to comply with any condition of the lease should work a forfeiture and entitle the trustee to immediate .possession. The term is three. years.

The court found that the trustees had failed to submit reports; that during the management of the trustees defendant Springer had advanced a considerable sum (according to the evidence $4,500) to meet current obligations, and that some $1,200 of indebtedness to J. W. Giddings, former manager, had not been paid. It disregarded the testimony submitted under the allegation of publication of libelous articles; found that the trustees had sold a small part only of, the property (according to the evidence, old type); that the trustees had negligently cared for some of the property, endangering it, but, so far as shown, not damaging it; that under the lease Montaner had become the controlling and possessing manager of the property, and that the trustees "have no longer any duties whatever to perform during the term of said lease to Montaner, if valid and subsisting, except the matter of accounting with the said Montaner, and with each of the said corporations"; that the only insurance, so far as shown, carried by the trustees, was payable to Taos Printing & Publishing Company; that the value of the "good will or circulation of either of the said corporation parties to this suit" was not shown, nor the financial condition of either of the trustee defendants; that since the making of the lease Montaner had managed and controlled the trust estate; that from the time the business was taken over by the trustees until the execution of the lease the business had operated at a loss; that the losses were not shown to have been due to any neglect, fraud, or' mismanagement by the trustees; that since the making of the lease Montaner had properly cared for all of the property of the trust estate; that, in taking the lease, he had no knowledge of the pendency of the suit, and that he expended large sums of money in good faith in reliance thereon; that the property of the trust estate is less. in value than its debts.

Upon the findings the court made the following conclusions of law:

"A. That the said trust estate is insolvent.

"B. That the trust agreement imposes upon the trustees, and their successors selected in the manner provided therein, duties of management and control of the trust estate, involving the exercise of discretion personal to the trustees and their said successors.

"C. That the trustees have no power to delegate their discretion and power of control and management to another by lease or otherwise.

"D. That the purported lease to Jose Montaner, the intervener herein, is an attempted delegation of the discretion of said trustees and an attempted transfer to said Montaner of the power of control and management vested in said trustees, and is beyond the powers of said trustee.

"E. That said Montaner, in taking a lease from said trustees, was charged with notice of the powers of said trustee as specified in the instrument creating said trust.

"F. That the acts and doings of the trustees, and their failure to account as set out in the findings of fact herein, constitute a breach of trust on the part of said trustees.

"G. That the plaintiff is entitled to the termination of said trust, to an accounting from said trustee, and to an equitable division of the said trust estate.

"H. That a receiver should be appointed to control and manage said trust estate until said accounting may be had and said estate divided."

By the decree the trust was terminated, a receiver was appointed to take immediate and full possession of the property and to sell the same with all convenient dispatch at public or private sale, and subject to approval of the court, and the trustees were required to account. From this decree, the defendants and the intervener have appealed.

Appellants' assignments of error are argued under three heads, namely, error in removing the trustees; error in appointing a receiver, in disregarding the primary object of the trust, and in dissolving it; and error in holding the Montaner lease invalid.

As appears from the findings, the grounds set up in the complaint were not sustained to any great extent.

Appellants argue that the removal of the trustees must have been based upon their failure to comply with their duty to account, which, according to the evidence, was merely a technical breach. They cite many authorities to the point that trustees will not be removed for slight misconduct or breaches of duty, but only in case of necessity of interference by the court to save the trust and to prevent defeat of its purpose. We need not follow appellants through this argument, because opposing counsel admit the principle. They disclaim for the court the theory of removal assumed by appellants, and put the decree on other grounds.

Appellee's position is that the decree was justified by the conclusion of insolvency of the trust estate and by the making of the lease. It contends that the court correctly found "that said trustees have no longer any duties whatever to perform during the term of said lease to said Montaner, if valid and subsisting, except the matter of accounting with the said Montaner and with each of said corporations," and correctly concluded "that the trust agreement imposes upon the trustees and their successors * * * duties of management and control of the trust estate involving the exercise of discretion personal to the trustees and their successors." It then argues that the trustees were without power thus to delegate their discretionary duties; that the lease is therefore void; that the attempt so to delegate their duties was an abandonment of their trusteeship or such misconduct as requires their removal; that the trust, involving personal confidence, could not be continued when the necessity arose for the removal of the trustees; that the insolvency of the trust estate has defeated the purpose for which it was conveyed—for which reasons there was nothing which the court could do, except to sell and distribute the estate.

According to the agreement, the trustees were generally to administer a printing and publishing business, and to "do and perform any and all acts and things necessary or proper in connection with said business." This power is broad. Their only specific duties were to render annual reports and to divide profits, if any, equally between the

trustors, and to conduct the publications as /Republican newspapers. No compensation was provided for the trustees. It appears extrinsically that, of the three, one lived in another county, and one in another town. In a sense, of course, a trust involves personal confidence. The parties would not have named trustees of whose integrity or business judgment they were in doubt. But the question is whether the trust imposed duties so personal in their nature that the performance of them could not be delegated, and, if so, whether any of these duties were in fact delegated to the lessee.

Clearly the three trustees were not expected to exercise more than a general supervision. They were not to collect and report the news, to write editorials, to solicit advertising or printing, or to collect bills. They could not have been expected personally to keep the books. It must have been anticipated that all of these functions would be delegated. This appellee admits. Its idea of the trustees' duties is thus expressed:

"* * * It was contemplated that a competent manager should be employed to look after these details, who would be directly under the control of the trustees, and subject absolutely to their orders, and whose employment would be subject to the will of the trustees, and that the trustees would closely scrutinize all obligations incurred, as well as all plans for the advancement of the business interests of their trust, and would authorize or reject all proposed expenditures and proposed business policies. In other words, we believe that the trustees were to act as a sort of board of directors, whose duty it was to meet regularly and dictate the policies and business principles of the trust, maintaining always a close personal contact and supervision of the business."

In view of the provisions of the trust agreement and of the surrounding circumstances, it seems to us that this conception of the trustee's duties involves an unreasonable program of activity for them.

Appellants contend that it was within the implied power of the trustees to make the lease it did. Appellee objects that the decisions cited have to do with property the ordinary and natural use of which, and incomes from which, can be enjoyed only if it is leased, and that this property is different. Its counsel cite many decisions to the effect

that trustees have no implied power to convey. They admit that they find none holding against the power to lease, but contend that the principle is the same. Here the logic is faulty. No better illustration of its unsoundness is needed than the present case. It goes without saying that the trustees could not have sold this property to Montaner. To have done so would have terminated the trust, which was to endure for 25 years. It would have defeated the purpose which was to be carried out for the same period. But to lease it for 3 years, with provisions for carrying out the objects to which the owners had dedicated it, is quite a different thing. It is a species of property in its nature capable of being "administered," either under lease or direct management. Which is wiser is a matter dependent upon circumstances. Trustees authorized to do and perform any act and thing proper in connection with the business to be administered are necessarily invested with discretion to consider the circumstances and make the decision.

So we conclude that the mere fact of leasing the property is unobjectionable. By the particular lease did the trustees attempt to delegate powers discretionary in the sense that they must be exercised directly, personally, and constantly? The trial court considered that the lease left the trustees with no duties to perform except to account. Such is not our view. They have provided by agreement for the safeguarding of the trust estate and the promotion of the trust objects. They are still responsible to the cestuis, just as before. They must hold the lessee to his engagements. They must see that he does not involve the trust estate in liability for expense or damage. They must examine his quarterly reports, verify them, and see that possible profits are divided as agreed. They must keep in touch with the news and editorial policies, to see that the publications continue Republican in politics and free from libelous matter. For breach of condition they retain their power, as is their duty, to repossess the property and arrange for its continued administration. The lease will expire, and they must renew it or otherwise provide. It is difficult to understand wherein they have abrogated

any essential discretionary powers which they could have been expected to exercise.

Appellee suggests that the details should have been looked after by a manager. Perhaps none could be found. Perhaps any one willing to undertake management would have demanded a three-year contract. Would such a contract have been also a delegation of power? We agree that this trust confers great discretion upon the trustees. When admitted that it did not impose personal and daily managerial duties, we think it follows that it includes discretion to lay out a three-year program, retaining power to enforce it. So we think that the learned trial court erred in holding the lease invalid. In our opinion, the trustees were not guilty of misconduct in making it.

Several questions arise as to the court's conclusion of insolvency. They need no consideration, however, since appellee does not apparently rely upon insolvency alone as a ground for terminating the trust, and we do not find it mentioned in the books as such ground. It is not a ground originally pleaded for the relief. The fact, if true, appeared incidentally. It is doubtful if the findings support such a conclusion. It does not appear that, by reason of insolvency, the continuance of the trust objects is impossible, or the interests of trustors or creditors endangered. Considering the interests of the trustors, one of whom resists termination of the trust, if it is a fact that the property of the trust estate is worth less than outstanding debts, the action of the court means total loss. Considering the interest of creditors, one of whom, the largest, in his capacity as trustee, resists termination, the decree means partial loss. An attempt has been made to prevent further loss and recoup past losses. It is not contended and was not found, that such attempt will necessarily prove futile. It is merely held to be illegal.

We hold, therefore, that the decree is erroneous, both as to the defendants and as to the intervener, and must be reversed. Defendants, before trial, admitted that plaintiff was entitled to an accounting, and offered to consent to the entry of decree therefor. The cause will be re-

manded, with direction to enter a consent decree for an accounting by the trustees, and to deny all other relief.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.