The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 3, 2025

**NO. S-1-SC-40090**

**DAVID P. PENA,**

      Worker-Petitioner,

v.

**STATE OF NEW MEXICO and
RISK MANAGEMENT DIVISION,**

      Employer-Respondents,

and

**EUGENE W. TRUJILLO,**

      Worker-Petitioner,

v.

**LUNA COMMUNITY COLLEGE and
NEW MEXICO PUBLIC SCHOOL
INSURANCE AUTHORITY,**

      Employers-Respondents.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Shanon S. Riley, Rachel A. Bayless, Workers' Compensation Judges**

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Hoffman Kelley Lopez, LLP
Jeffrey L. Federspiel
Albuquerque, NM

for Respondents Luna Community College and New Mexico Public School Insurance Authority

Paul L. Civerolo, LLC
Evie M. Jilek
Albuquerque, NM

for Respondent State of New Mexico Risk Management Division

Martinez, Hart, Sanchez & Romero, P.C.
Julio C. Romero
Albuquerque, NM

David J. Stout
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**BACON, Justice.**

{1}     On order of certification from the Court of Appeals, we consider whether the attorney fees cap in the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 through -70 (1929, as amended through 2017) (the Act), violates the separation-of-powers doctrine by infringing on this Court's inherent and superintending control powers and concomitant power to regulate the practice of law. *See* Order of Certification to the New Mexico Supreme Court, A-1-CA-39744, A-1-CA -39842 (N.M. Ct. App. Sept. 6, 2023) (COA Order) at 1-2.

{2}     This Court's "'constitutional power under N.M. Const. art. III, § 1 [separation of powers] and art. VI, § 3 of superintending control over all inferior courts carries with it the inherent power to regulate all pleading, practice[,] and procedure affecting the judicial branch of government.'" *Ammerman v. Hubbard Broad., Inc.*, 1976-NMSC-031, ¶ 15, 89 N.M. 307, 551 P.2d 1354 (quoting and affirming *State ex rel. Anaya v. McBride*, 1975-NMSC-032, ¶ 10, 88 N.M. 244, 539 P.2d 1006). Four certified questions from the underlying cases ask us to determine the scope of that regulatory power in relation to Section 52-1-54(I), the attorney fees cap (the Cap) in the Act. The Cap relevantly limits compensation for "representation before the

workers' compensation administration [(the WCA)] and *the courts on appeal*." Section 52-1-54(I) (emphasis added).

{3}     We address the four certified questions in turn below. In brief, we hold Section 52-1-54(I) infringes on this Court's power to regulate attorney fees in appeals brought from the quasi-judicial WCA to the Judiciary's courts, and accordingly we declare that provision nonbinding on such appeals. We further hold this ruling shall be applied with selective prospectivity.

{4}     We begin by providing historical context for the workers' compensation issues before us.

## I.     BACKGROUND

{5}     As a starting point, the majority in *State ex rel. Hovey Concrete Prods. Co. v. Mechem*, 1957-NMSC-075, ¶¶ 1, 4, 63 N.M. 250, 316 P.2d 1069, *overruled by Wylie Corp. v. Mowrer*, 1986-NMSC-075, ¶¶ 4-6, 104 N.M. 751, 726 P.2d 1381, held unconstitutional the Workmen's Compensation Act of 1957, which had established an administrative framework for workers' compensation claims. Governor Edwin L. Mechem had not appointed commissioners "because of the doubtful validity of the [a]ct," leading to the mandamus action in *Mechem* to compel such appointments. *Id.* ¶ 1. In declaring a separation-of-powers violation, the majority in *Mechem* distinguished between the "clearly . . . judicial" workers' compensation

2

commission, which "determin[ed] [] rights and liabilities between individuals," and other "quasi-judicial" "boards and commissions created to administer regulatory laws affecting the general public." *Id.* ¶¶ 2, 4-5, 9. Departing starkly from the majority opinion, Justice Sadler's dissent presented a careful examination of caselaw from New Mexico and other states supporting that legislative creation of a quasi-judicial workers' compensation commission "is no unlawful delegation of judicial power." *Id.* ¶ 19 (Sadler, J., dissenting). Highlighting that separation-of-powers clauses in state constitutions "all have substantially the same proviso, expressed in comparable or almost identical language," Justice Sadler asserted New Mexico was improperly an outlier in holding the Legislature lacked constitutional authority to create a workers' compensation framework and commission. *Id.* ¶¶ 18-19 (Sadler, J., dissenting).

{6} Next, in 1986, notwithstanding *Mechem*, the Legislature enacted 1986 N.M. Laws, ch. 22, §§ 1 through 106, thereby establishing that workers' compensation claims would be resolved by an administrative agency rather than the district courts. *See, e.g.*, NMSA 1978 (1986 Supp.) Section 52-5-7(B) ("Following the presentation of the evidence, the hearing officer shall determine the questions at issue and file the decision with the director [of the agency] within thirty days."). As we have subsequently recognized, "the Legislature's principal objectives in enacting [the Act

were] (1) maximizing the limited recovery available to injured workers, in order to keep them and their families at least minimally financially secure; (2) minimizing costs to employers; and (3) ensuring a quick and efficient system." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 25, 137 N.M. 734, 114 P.3d 1050.

{7}     Also in 1986, questions regarding the timing of transfer to the WCA of jurisdiction over workers' compensation claims led to *Wylie*, 1986-NMSC-075. Determining that the constitutionality of "the 1986 Act, in view of *Mechem*," was a threshold issue, the *Wylie* Court "adopt[ed] all that is said in [J. Sadler's] dissent as convincing reasons why *Mechem* should be overruled" and consequently held the Act to be constitutional. *Id.* ¶¶ 2-6. The *Wylie* opinion was filed on October 29, 1986.

{8}     Meanwhile, proponents of the Act supported a November 4, 1986 ballot measure to amend Article III, Section 1—the separation-of-powers provision in the New Mexico Constitution—to resolve *Mechem*. Though recognized at the time as moot under *Wylie*,[1] the amendment passed (the 1986 Amendment), adding the following language to Article III, Section 1:

---

[1]*See, e.g.*, "Leah Beth Ward, *Compensation Panel Amendment Now 'Moot Point*,'" Albuquerque Journal, Oct. 31, 1986, at 15 ("State Sen. Les Houston, R-Bernalillo, said he's urging voters to approve the constitutional amendment just in case the [Supreme C]ourt reverses itself in the future.") (on file with the New Mexico Supreme Court Law Library).

> Nothing in this section, or elsewhere in this constitution, shall prevent the legislature from establishing, by statute, *a body* with statewide jurisdiction *other than the courts of this state* for the determination of rights and liabilities between persons when those rights and liabilities arise from transactions or occurrences involving personal injury sustained in the course of employment by an employee. *The statute shall provide for* the type and organization of the body, the mode of appointment or election of its members and *such other matters as the legislature may deem necessary or proper*.

(Emphasis added.) The 1986 Amendment took effect less than a week after *Wylie* was filed.

{9}     As final historical context, Section 52-1-54(I), enacted in 1987, limits attorney fees "for a single accidental injury claim, including representation before the [WCA] and the courts on appeal," to $22,500.

{10}     In the underlying cases, Worker-Appellants David Pena and Eugene Trujillo (Appellants) were each awarded maximum attorney fees under the Cap at the administrative level. Based on his two injuries, Appellant Pena was awarded the maximum attorney fees of $45,000, payable 50% by him and 50% by Employer-Appellee State of New Mexico (Appellee). *See* Section 52-1-54(J) ("[With two statutory exceptions,] the payment of a claimant's attorney fees determined under this section shall be shared equally by the worker and the employer."). Appellant Trujillo was awarded the maximum attorney fees of $22,500, payable 100% by Employer-Appellee Luna Community College (Appellee). *See* Section 52-1-

54(F)(4) (providing an exception to Section 52-1-54(J) under which "the employer shall pay one hundred percent of the attorney fees to be paid the worker's attorney").

{11}     The Court of Appeals, framing the larger issue as whether Section 52-1-54(I) poses a separation-of-powers problem, certified the following four questions, discussed herein at length:

>     (1)     Whether the regulation of attorney fees generally—and within the workers' compensation context specifically—falls within the purview of the Supreme Court's constitutionally granted "superintending control over all inferior courts," N.M. Const. art. VI, § 3, and its related, exclusive power to regulate the practice of law[;]
>     (2)     If this authority resides within the Supreme Court, whether Section 52-1-54(I) conflicts with rules promulgated by the Supreme Court or precedent adopted by that Court[;]
>     (3)     Whether the 1986 amendment to Article III, Section 1 [of the N.M. Const. (1986 Amendment)] transferred some of the Supreme Court's authority to regulate the practice of law to the legislative branch in the workers' compensation context[; a]nd, even if so, whether the Legislature has unconstitutionally curbed the judiciary's review of attorney fees in the workers' compensation context[;]
>     (4)     Whether the Legislature, by regulating attorney fees within the appellate courts, *see* § 52-1-54(I) ("Attorney fees, . . . including representation before the workers' compensation administration *and the courts on appeal*, shall not exceed twenty-two thousand five hundred dollars ($22,500)." (emphasis added)), has infringed upon the Supreme Court's exclusive power to regulate practice procedure *in the courts*[.]

COA Order at 5-8.

{12}    We accepted certification pursuant to NMSA 1978, Section 34-5-14(C)(1), (2) (1972), concluding that this matter involves both "a significant question of law" under our state constitution and "an issue of substantial public interest that should be determined by the [S]upreme [C]ourt."

## II.    DISCUSSION

{13}    Because the certified questions present purely legal issues of constitutional and statutory construction, our analysis is de novo. *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. We include the parties' arguments as relevant to clarifying our reasoning and holding.

**A.    Notwithstanding This Court's Exclusive Constitutional Prerogative to Regulate All Pleading, Practice, and Procedure, the Legislature May Nonetheless Speak in This Area Without Per Se Violation of Article III, Section 1**

{14}    Preliminary to resolving the certified questions, we address the Court of Appeals' characterization of this Court's "*exclusive* power to regulate the practice of law." COA Order at 5 (emphasis added). To the extent this characterization suggests that legislative regulation of the practice of law per se violates Article III, Section 1, we clarify otherwise.

{15}    This Court's power to regulate the practice of law derives from both our inherent power under Article III, Section 1 and our power of superintending control under Article VI, Section 3. *Ammerman*, 1976-NMSC-031, ¶ 15; *see also State v.*

7

*Roy*, 1936-NMSC-048, ¶ 93, 40 N.M. 397, 60 P.2d 646 ("[T]he power to provide rules of pleading, practice, and procedure for the conduct of litigation in the district courts, as well as rules of appellate procedure, is lodged in this court by the Constitution of New Mexico."); *Sw. Cmty. Health Servs. v. Smith*, 1988-NMSC-035, ¶ 6, 107 N.M. 196, 755 P.2d 40 (stating, in relation to Article III, Section 1, that "[p]leading, practice and procedure are of the essence of judicial power"). As we have said, which the Court of Appeals cites, "[This] constitutional [regulatory] power is vested exclusively in this [C]ourt." *Anaya*, 1975-NMSC-032, ¶ 11; *see* COA Order at 8.

{16} Accordingly, "the regulation of the practice of law is the exclusive constitutional prerogative of this Court." *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 1973-NMSC-087, ¶ 26, 85 N.M. 521, 514 P.2d 40. Under such prerogative, "any conflict between court rules and statutes" regarding regulation of the practice of law shall be "resolved . . . in favor of the rules." *Smith*, 1988-NMSC-035, ¶ 6 ("Functions of the judiciary which are essential to its constitutional powers cannot be exercised by another branch of the government in conflict with the judicial branch."); *see also State v. Arnold*, 1947-NMSC-043, ¶ 10, 51 N.M. 311, 183 P.2d 845 ("Statutes relating to pleading and practice are procedural and may be modified by rule."). As we expressly stated in *Anaya*, while the Legislature "has in the past

attempted" "to prescribe by statute rules of practice and procedure," "[c]ertainly statutes purporting to regulate practice and procedure in the courts cannot be made binding, for the constitutional power is vested exclusively in this court." 1975-NMSC-032, ¶ 11.

{17} Notwithstanding our clear constitutional authority in this area, we have not excluded the Legislature from the procedural rule-making process for state courts but instead have relevantly "revoke[d] or amend[ed] a statutory provision [only] when the statutory provision conflicts with an existing court rule." *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 5, 138 N.M. 398, 120 P.3d 820. In *Blackmer*, we analyzed *Ammerman* and underlying cases in recognizing judicial supremacy in such conflicts while otherwise determining "when we might give effect to legislation affecting practice and procedure." *Id.* ¶ 11. In the privilege context, as an evidentiary matter and therefore a procedural one, the *Blackmer* Court explained the principle that when a legislative enactment "affect[s] arguably the same subject matter" as an existing constitutional or court rule privilege, "we analyze . . . whether [the statutory provision] is consistent with the purpose of the constitutional or court rule privilege." *Id.* If yes, "both are given effect"; if no, "the statutory privilege is not given effect and the constitutional or court rule privilege prevails." *Id.* Under this framework, the *Blackmer* Court gave effect to the Victim

9

Counselor Confidentiality Act, NMSA 1978, Sections 31-25-1 to -6 (1987), where the purpose of the legislative privilege therein was consistent with the purpose of the court rule privilege in Rule 11-504 NMRA. *Blackmer*, 2005-NMSC-032, ¶¶ 1, 13-14 ("The parallels between the purposes for the judicial and statutory privileges [are] clear.").

{18}     In contrast in *Ammerman*, we considered a conflict between a statutorily created confidential-source privilege and our rules. 1976 -NMSC- 031, ¶ 3. Whereas our Rule 11-501 NMRA only recognized constitutional privileges or privileges adopted by court rule, and whereas this Court had not adopted a confidential source privilege, the *Ammerman* Court held the "privilege [against disclosure] purportedly created by [the challenged statute] is constitutionally invalid and cannot be relied upon or enforced in judicial proceedings." *Id.* ¶ 17. We note the Court's clarification that the statutory privilege was declared invalid only within the judicial context: "We in no way suggest that the privilege may or may not properly be asserted in any proceeding or investigation before, or by any legislative, executive or administrative body or person." *Id.*

{19}     In sum, we exercise our absolute constitutional prerogative regarding regulation of all pleading, practice, and procedure in an *ultimate* rather than *exclusive* manner. As we implicitly approved in *Blackmer*, "'A careful reading of the cases

and subsequent decisions applying them suggests . . . that the supreme court intended not to exclude the legislature from the rule-making process but only intended to assure judicial supremacy in any clash between legislative and judicial rules of procedure.'" 2005-NMSC-032, ¶ 5 (quoting Michael B. Browde & M.E. Occhialino, *Separation of Powers and the Judicial Rule-Making Power in New Mexico: The Need for Prudential Constraints*, 15 N.M. L. Rev. 407, 437 (1985)); *see also State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 32, 120 N.M. 562, 904 P.2d 11 ("Despite the strict language of Article III, Section 1, . . . the constitutional doctrine of separation of powers allows some overlap in the exercise of governmental function." (alteration, internal quotation marks, and citation omitted)).

{20}    With this clarification in mind, we proceed to address the certified questions in turn.

**B.    Certified Question 1: Our Inherent Powers and Power of Superintending Control Encompass the Regulation of Attorney Fees Generally but Not Regulation of Attorney Fees Within the Workers' Compensation Context Specifically**

**1.    Our constitutional power to regulate the practice of law encompasses the regulation of attorney fees generally**

{21}    As discussed, this Court's constitutional authority to regulate all pleading, practice, and procedure is well established, as is this Court's concomitant authority to regulate the practice of law. *See State Bar v. Guardian Abstract & Title Co.*, 1978-

11

NMSC-016, ¶ 23, 91 N.M. 434, 575 P.2d 943 ("The authority of the Supreme Court to define and regulate the practice of law is inherently contained in the grant of judicial power to the courts by the Constitution."); NMRA Rule Set 15, Preface ("The Supreme Court, pursuant to its constitutional power of superintending control, has the inherent authority to regulate the practice of law, prescribe the qualifications for admission to the bar, and grant or withhold the right to practice law."). The first certified question requires us initially to determine if our regulatory power over the practice of law includes regulation of attorney fees generally. We hold that it does.

{22}     We begin by recognizing that we have not precisely defined the practice of law, due to "the infinite number of fact situations which may be presented, each of which must be judged according to its own circumstances." *Norvell*, 1973-NMSC-087, ¶ 19; *accord Guardian Abstract*, 1978-NMSC-016, ¶ 25. Such differentiation can be extremely difficult, *cf. Guardian Abstract*, 1978-NMSC-016, ¶ 27, but is important to serve the public interest, which we have recognized as the underlying purpose of licensure and regulation of the practice of law, *id.* ¶ 20 ("The close regulation of those who practice law is to protect the unwary and the uninformed from injury at the hands of persons unskilled or unlearned in the law."). In *Guardian Abstract*, we cited the Supreme Court of Minnesota for elements of licensure by which "the public welfare is safeguarded," including "[r]esponsible [court]

supervision." *Id.* ¶ 21 (internal quotation marks and citation omitted) (citing *Gardner v. Conway*, 48 N.W.2d 788, 795 (Minn. 1951)). We take further note of caution in *Gardner* that, regarding professional standards, "any choice of criterion must find its ultimate justification in the interest of the public and not in that of advantage for either lawyer or nonlawyer." 48 N.W.2d at 795. Indeed, in enforcing Rule 16-105, often in combination with other Rules of Professional Conduct, we have weighed the public interest as an important factor. *See, e.g.*, *In re Greenfield*, 1996-NMSC-015, ¶¶ 1, 13, 121 N.M. 633, 916 P.2d 833 ("If an attorney commits such a grievous harm as did respondent in his representation of [client, including violation of 16-105] without incurring serious sanction, the public would be justified if it were to lose faith in the judicial system."); *In re Martinez*, 1989-NMSC-018, ¶¶ 18-19, 108 N.M. 252, 771 P.2d 185 ("[T]he continued practice of law by [respondent] would pose grave dangers to the public, the reputation of the profession, and the administration of justice, and [we] find no alternative to disbarment."); *In re Sheehan*, 2001-NMSC-020, ¶ 21, 130 N.M. 485, 27 P.3d 972 ("These restrictions on respondent's practice . . . convince us that the legal profession, the legal system, and the public will be well served by the imposition of the discipline provided in the conditional agreement admitting allegations and consent to discipline.").

{23} Under these considerations, we conclude regulation of attorney fees abides within our role and responsibility to protect the public interest through regulation of the practice of law. In contrast to the fact-specific challenge of defining the myriad tasks involved in the practice of law, we find it self-evident that attorney fees are a common feature thereof, outside of pro bono cases. Most obviously, by requiring and governing reasonable attorney fees, Rule 16-105 NMRA protects the public from financial exploitation by attorneys. *See* Rule 16-105(A) ("A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses."). Given the potential severity of such financial exploitation, our regulation of the practice of law *without* regulation of attorney fees would not satisfy the principle of *responsible supervision* in *Guardian Abstract* and *Gardner*.[2]

---

[2]Even in claims brought under Rules of Professional Conduct other than Rule 16-105, we have not ignored the implications of those alleged violations on the costs to clients. *See, e.g., Guardian Abstract*, 1978-NMSC-016, ¶ 38 ("Although it is claimed that no charge was made for the services in question here, we feel it important to state that the making of separate additional charges to fill in the blanks [on enumerated forms] would be considered the 'practice of law,' for the reason that it would place emphasis on conveyancing and legal drafting as a business rather than on the business of the title company."); *Norvell*, 1973-NMSC-087, ¶ 37 (noting "th[is] [C]ourt through its rule making power has effected certain modifications of the Code of Professional Responsibility so as to permit arrangements for prepaid legal services under certain circumstances").

{24} In summary, the public-interest implications of Rule 16-105 support the proposition that general regulation of attorney fees abides properly under both our Rules of Professional Conduct and our constitutional regulation of the practice of law. *Cf. Mercer v. Reynolds*, 2013-NMSC-002, ¶ 15, 292 P.3d 466 ("It is this Court's responsibility to interpret and apply the Rules of Professional Conduct that govern the legal profession."). While we reach the result sought by Appellants regarding regulation of attorney fees generally, we explain next why this conclusion does not follow the parties' arguments.

**a. Appellants' arguments under out-of-state caselaw do not avail**

{25} We clarify that we do not follow the cases from the supreme courts of Utah and Minnesota cited by the Court of Appeals and argued under by Appellants: *Injured Workers Ass'n of Utah v. State*, 374 P.3d 14 (Utah 2016) (*IWA*) and *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132 (Minn. 1999). Appellants cite these cases to suggest the Cap constitutes a separation-of-powers violation.

{26} As quoted by our Court of Appeals, the Utah Supreme Court in *IWA*, 374 P.3d at 16, held under the state constitution that it has "'exclusive inherent and constitutional authority to govern the practice of law.'" COA Order at 5-6. Arguing for *IWA*'s applicability here, Appellants point to both Utah and New Mexico having "[workers' compensation] claims . . . administered by an executive agency (Labor

Commission/WCA) that was legislatively granted the 'full power to regulate and fix' attorney fees." Otherwise, Appellants simply make a brief policy argument: "This Court should likewise provide its attorneys—its officers of the court—with such a fundamental, logical and long-overdue ruling."

{27} The thin reasoning in *IWA* does not offer a compelling model for resolution here. The *IWA* Court refuted the state's use of *Thatcher*, a 1949 Utah case,[3] in holding "that the regulation of attorney fees falls squarely within the practice of law. It is something we have regulated since before *Thatcher* and continue to regulate today." 374 P.3d at 22. Otherwise, the *IWA* Court reasoned only that "the supreme court is in a better position than an administrative agency to determine the reasonableness of attorney fees" and that "regulating attorney fees goes to the very heart of the practice of law, inasmuch as it involves assessment of the quality,

---

[3]*Thatcher v. Indus. Comm'n*, 207 P.2d 178 (Utah, 1949), *overruled by IWA*, 374 P.3d at 21-22.

amount, and value of legal services related to a legal problem."[4] *Id.* In short, *IWA* does not provide constitutional analysis of the practice of law to guide our ruling.[5]

{28} Appellants also point to *Irwin*, 599 N.W.2d at 134, wherein the Supreme Court of Minnesota declared "that the statutorily imposed limitation on attorney fees violates the doctrine of separation of powers insofar as it is not subject to review by a duly established court and grants final authority over attorney fees to a non-judicial body." Appellants quote *Irwin* without analysis, ignoring—as Appellees answer and Appellants do not contest—that "the [*Irwin*] Court did not take issue with the fee cap amount itself nor the fact that one existed, rather it took issue with its judicial review being curtailed by the fee cap." Thus, *Irwin* is inapposite to this first certified question. Following the COA Order, we discuss *Irwin* further in relation to Certified Question 3.

---

[4]*IWA* also discusses the relevance of the 1985 amendment to the Utah Constitution, which gave the Utah Supreme Court "explicit and exclusive" authority to regulate the practice of law, 374 P.3d at 18, 22, but that discussion has no relevance here.

[5]Because Rule 12-318(B) NMRA does not provide for incorporation by reference, we do not address Appellees' Court of Appeals briefing regarding *IWA*, which they attempt to so incorporate.

**b. Appellees mischaracterize regulation of attorney fees as substantive law**

{29} Appellees notably do not directly address if our constitutional power to regulate the practice of law encompasses the regulation of attorney fees generally, asserting the issue is "distinguishable and inapplicable to the case at hand." However, we note as relevant here Appellees' alternative argument to the second certified question: that regulation of attorney fees is a matter of *substantive law* rather than *procedural law*, and accordingly a statute regarding that matter would prevail over a conflicting rule. Appellees rely on *Marek v. Chesny*, 473 U.S. 1, 35 (1985) (Brennan, J., dissenting), for the proposition, "The right to attorney's fees is 'substantive' under any reasonable definition of that term." Here we correct Appellees' mischaracterization of regulation of attorney fees under *Marek* in order to clarify our holding.

{30} Appellees are correct that matters of substantive law are the province of the Legislature, whereas adjective or procedural law is the province of the Judiciary. *See Arnold*, 1947-NMSC-043, ¶ 11; *Smith*, 1988-NMSC-035, ¶ 12. "It is well settled that a substantive law creates, defines, or regulates rights while procedural law outlines the means for enforcing those rights and obtaining redress." *State ex rel. Gesswein v. Galvan*, 1984-NMSC-025, ¶ 5, 100 N.M. 769, 676 P.2d 1334. We have further defined adjective/procedural law as including "'the mechanics of practice and

procedure, the legal machinery by which the substantive law is made effective.'" *Gray v. Armijo*, 1962-NMSC-082, ¶ 18, 70 N.M. 245, 372 P.2d 821 (quoting 72 C.J.S. Process 25). In *Ammerman*, we recognized that substantive law and adjective/procedural law constitute a "dichotomy," 1976-NMSC-031, ¶¶ 8-9, wherein all law falls into one or the other of those mutually exclusive categories. This Court's regulation of attorney fees in Rule 16-501 is adjective or procedural: we set guidelines for reasonableness of such fees to be applied by all inferior courts, thereby "*outlin[ing] the means* for enforcing [a] right[] and obtaining redress." *Gesswein*, 1984-NMSC-025, ¶ 5 (emphasis added).

{31}     We reject Appellees' premise and application of *Marek* for two reasons. First, the proposition in *Marek* on which Appellees rely appears in a dissent.[6] *See* 473 U.S. at 35 (Brennan, J., dissenting). As such, the proposition does not alone offer a sound foundation for our jurisprudence. Second, critically, the meaning of "the *right to* attorney's fees" (emphasis added) within *Marek* is quite different from *regulation of* attorney fees here. In the context of *Marek*, a party's right to attorney fees stems from a substantive provision in 42 U.S.C. § 1988(b) ("Attorney's fees"). *See generally Marek*, 473 U.S. 1. As Justice Brennan explained, "fee awards [under §

---

[6]We note Appellees do not acknowledge this dissent posture in their citation.

1988] are an integral part of the *remedies* necessary to obtain . . . compliance with the civil rights laws and to redress violations." 473 U.S. at 35-36 (Brennan, J., dissenting) (omission in original) (internal quotation marks and citation omitted). Applying our definitions in *Gesswein*, § 1988(b) "*creates, defines, or regulates*" such a right and thus is substantive law. *Gesswein*, 1984-NMSC-025, ¶ 5 (emphasis added).

{32}     For these reasons, we reject Appellees' position under *Marek* that regulation of attorney fees generally constitutes substantive law and thus falls in the legislative purview. The regulation of attorney fees constitutes adjective/procedural law and thus falls within our constitutional regulation of the practice of law.

**2.     Our constitutional power to regulate the practice of law does not extend to regulation of attorney fees within the workers' compensation context specifically**

{33}     We next determine whether our regulatory power over the practice of law includes regulation of attorney fees within the workers' compensation context specifically. We hold that it does not.

{34}     *Wylie* controls here. As alluded above, the *Wylie* Court expressly overruled *Mechem*, adopted Justice Sadler's "vigorous and forceful logic" in the *Mechem* dissent, and held "that creation of a work[ers'] compensation administration and

20

vesting in it the determination of controversies thereunder, is a valid exercise of legislative power." *Wylie*, 1986-NMSC-075, ¶¶ 2-6.

{35} Importantly, *Wylie* also specifically rejected *Mechem*'s characterization of a workers' compensation commission as a "'clearly . . . judicial'" body rather than a "'quasi-judicial'" one. *Id.* ¶ 4 (omission in original) (quoting *Mechem*, 1957-NMSC-075, ¶¶ 4, 9) (recognizing numerous administrative agencies that "operate unhindered under" Article VI, Section 1). Instead, *Wylie* expressly recognized the quasi-judicial context of a workers' compensation administration, which serves the Legislature's "underlying purpose . . . to protect the work[er] from becoming a public charge upon the welfare rolls." *Id.* ¶ 5 ("Within the policy considerations of the [Act], the interests of the claimant and the public are paramount."). From Justice Sadler's dissent in *Mechem*, adopted by the *Wylie* Court, we note the following clarifying language regarding the nature of quasi-judicial proceedings as regards separation of powers:

> "Once the obvious right of the Governor and the Legislature, each to adjudicate within [its] own proper sphere, is recognized and it is conceded that the courts are not the exclusive instrumentalities for adjudication, the true nature of the administrative adjudications, commonly termed 'quasi-judicial', becomes apparent. *This term serves to characterize* not the quality of the adjudication but *its origin outside the judicial branch of the government*."

21

1957-NMSC-075, ¶ 23 (Sadler, J., dissenting) (emphasis added) (*quoting Mulhearn v. Fed. Shipbuilding & Dry Dock Co.*, 66 A.2d 726, 730 (N.J. 1949)). This articulation makes clear that quasi-judicial proceedings such as those within the WCA exist outside the judicial branch.[7]

{36}    We further conclude *Wylie* rendered the 1986 Amendment duplicative and unnecessary generally, as *Wylie* took effect days before the 1986 Amendment took effect, established the constitutionality of the Act, and held that all workers' compensation claims would be filed with the WCA as of December 1, 1986. *Wylie*, 1986-NMSC-075, ¶¶ 2-6. Nonetheless, the 1986 Amendment bolsters the holding in *Wylie* regarding the Legislature's authority to establish "a *body* with statewide jurisdiction *other than the courts of this state*." N.M. Const. art. III, § 1 (emphasis added). This plain language reinforces that WCA proceedings fall outside this Court's power of "superintending control over all inferior courts." *See* N.M. Const.

---

[7]While we expressly approve the meaning of "quasi-judicial" discussed herein, we recognize that this Court on occasion has used the term to distinguish ancillary roles or responsibilities *within* the Judiciary. *See Kimbrell v. Kimbrell*, 2014-NMSC-027, ¶ 2, 331 P.3d 915 (holding "a Rule 1-053.3 guardian ad litem is protected by absolute quasi-judicial immunity from suit arising from the performance of his or her duties unless the guardian ad litem's alleged tortious conduct is clearly and completely outside the scope of his or her appointment"); *Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶ 13, 111 N.M. 391, 806 P.2d 40 ("[W]e believe that absolute, quasi-judicial immunity should be extended to guardians ad litem under certain circumstances."), *abrogated on other grounds by State v. Mares*, 2024-NMSC-002, ¶ 2, 543 P.3d 1198.

art. VI, § 3. We reiterate our relevant analysis in *Ammerman* that this Court's power "'of superintending control over all inferior courts carries with it the inherent power to regulate all pleading, practice and procedure *affecting the judicial branch of government*.'" *Ammerman*, 1976-NMSC-031, ¶ 15 (quoting *Anaya*, 1975-NMSC-032, ¶ 10 (emphasis added)).

{37}  Appellants assert that regulation of attorney fees in the workers' compensation context "runs directly into and conflicts with the Supreme Court's exclusive authority to regulate the practice of law; and as such, [the fee cap] is a constitutionally impermissible infringement." Appellants quote the text of Article III, Section 1 of the New Mexico Constitution prohibiting any branch from "exercis[ing] any powers properly belonging to either of the others, except as in this constitution otherwise *expressly directed or permitted*." (Emphasis added.) Under that text, Appellants point to the absence of such express constitutional language—including in the 1986 Amendment—granting the Legislature power to regulate the practice of law within the workers' compensation context.

{38}  Under our foregoing determinations, however, Appellants' arguments fail, as this Court's inherent authority is not infringed by legislative regulation of pleading, practice, and procedure that occurs *outside of the Judiciary's courts*. Accordingly, express constitutional language is not required for the Legislature to exercise

23

regulatory power over the WCA. We note that Appellants do not explain how their position abides with *Wylie*'s reasoning regarding quasi-judicial contexts being constitutional.

{39} We note with approval Appellees' citation of *Jones*, *Carillo*, and *Chavez*, three Court of Appeals cases respectively stating that "the WCA is a creature of the Legislature," *Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 19, 331 P.3d 992; "The WCA is not part of the judiciary; appeals are taken from decisions of the [Workers' Compensation Judge] *to* the judiciary." *Carillo v. Compusys, Inc.*, 1997-NMCA-003, ¶ 9, 122 N.M. 720, 930 P.2d 1172; and the WCA "has inherent authority to control quasi-judicial proceedings held before it." *Chavez v. State Workers' Comp. Admin.*, 2012-NMCA-060, ¶ 15, 280 P.3d 927. We briefly address *Chavez* further, as that case involved the WCA as a party, and the parties here debate its relevance.

{40} In *Chavez*, the Court of Appeals considered the WCA's authority to suspend the attorney from practicing therein, concluding the suspension was proper under the WCA's "inherent authority to control [its] quasi-judicial proceedings." 2012-NMCA-060, ¶¶ 1, 15. Citing our power of superintending control and quoting Rule 17-201 NMRA, the *Chavez* Court drew the important distinction between this Court's "'exclusive disciplinary jurisdiction'" over attorneys and the power of "'any

other court . . . to maintain control over proceedings conducted before it.'" *Id.* ¶¶ 12-13. Analogizing a workers' compensation judge to a trial judge, the *Chavez* Court determined "the WCA's actions in this case were undertaken to control its own proceedings, separate and independent, and separate of the Supreme Court's power to institute disciplinary proceedings against Chavez affecting his status as an attorney." *Id.* ¶ 14. Thus, the Court of Appeals upheld the WCA's Stipulated Order, except for its prohibition on attorney Chavez "'generating any fees associated with workers' compensation matters,'" as that prohibition was not necessary to control the WCA's proceedings and did infringe this Court's exclusive jurisdiction. *Id.* ¶¶ 16-17. Contrary to Appellants' assertion, *Chavez* does not "support[] the conclusion that the WCA cannot regulate attorney fees at all," only that such regulation cannot encroach on this Court's exclusive disciplinary authority.

{41}     We take this opportunity to clarify that while our rules are not binding on quasi-judicial *agencies* and *tribunals*, our Rules of Professional Conduct remain binding on *attorneys* at all times, pursuant to their licensure. As we allude below, our responsible supervision of the practice of law does not ignore professional conduct of licensed attorneys practicing in quasi-judicial forums, and we do not conflate such supervision with regulation of attorney fees in those forums. To be even clearer, while a quasi-judicial agency is under no obligation to apply Rule 16-

25

105 pursuant to its proceedings, a licensed attorney remains subject to the requirements of that rule and subject to discipline for its violation.

{42} In conclusion, we hold that regulation of attorney fees generally falls within the purview of this Court's inherent powers and power of superintending control, but regulation of attorney fees specifically within the workers' compensation context does not.

**C.** **Certified Question 2: Because Regulation of Attorney Fees in the Quasi-Judicial WCA Properly Falls Under the Legislative Purview, Section 52-1-54(I)—*Applicable Only Within the WCA*—Does Not Conflict with Our Rules or Precedents**

{43} Under our determinations above, we need not reach the second certified question, which is premised on an unmet condition—this Court's authority to regulate attorney fees within the workers' compensation context. Because we do not possess that authority, our rules of pleading, practice, and procedure and our precedents interpreting them are not binding in that quasi-judicial context. Stated differently, whatever conflict might exist between Rule 16-105 and Section 52-1-54(I) in the workers' compensation administrative context is a matter for the WCA to resolve.

**D. Certified Question 3: The 1986 Amendment to Article III, Section 1 of the New Mexico Constitution Did Not Transfer Any of This Court's Regulatory Authority over the Practice of Law; Section 52-1-54(I) Does Not Unconstitutionally Curb Judicial Review of Attorney Fee Awards in the WCA**

{44} The third certified question focuses on the possible transfer of some of this Court's authority to the Legislature effected by the 1986 Amendment. As we have stated, the 1986 Amendment bolstered what *Wylie* had already construed: the Legislature's constitutional authority to establish a workers' compensation administration. *Wylie* makes clear such an agency is—and always was—properly quasi-judicial, and we have concluded our regulation of the practice of law does not—and never did—bind such a quasi-judicial agency as to its rules of pleading, practice, and procedure. Further, nothing in the plain language of the 1986 Amendment speaks to transfer of any portion of this Court's regulatory authority. Consequently, the inherent authority to regulate the practice of law pursuant to Article III, Section 1 of the New Mexico Constitution remains with this Court, and the 1986 Amendment did not transfer any of that authority.

{45} Under this determination, we construe the second part of this certified question to ask whether, given that no judicial authority was transferred to the Legislature by the 1986 Amendment, Section 52-1-54(I) unconstitutionally curbs the Judiciary's review of attorney fee awards in the WCA. In this regard, the Court of

Appeals cites *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, 118 N.M. 470, 882 P.2d 511, as well as *Irwin*, 599 N.W.2d at 141-42. COA Order at 6-7. As we explain, *Harrell* provides the applicable standard in New Mexico, under which judicial review is undiminished by the Cap.

{46} Relevant here, this Court in *Harrell* considered whether an otherwise proper compulsory arbitration statute was constitutional in its "sharp constriction of judicial review of the arbitrator's decision." 1994-NMSC-096, ¶ 1. The challenged provision of the statute required that "[t]he decision of the independent arbitrator . . . shall be nonappealable except where the decision was procured by corruption, fraud, deception[,] or collusion, in which case it may be appealed to the court of appeals." *Id.* ¶ 48 (internal quotation marks and citation omitted). Based on this statutory limitation, the *Harrell* Court held that the provision "does not permit meaningful review of the arbitrator's decision by the court. We therefore strike this provision as a violation of due process and as an unconstitutional delegation of judicial power." *Id.* ¶ 50.

{47} *Harrell* provided principles relevant here. Regarding the separation-of-powers concern of "*unchecked* power in the hands of any one branch," *id.* ¶ 45 (internal quotation marks and citation omitted), the *Harrell* Court stated,

> The judiciary thus must maintain the power of check over the exercise
> of judicial functions by quasi-judicial tribunals in order that those

adjudications will not violate our constitution. The principle of check requires that the essential attributes of judicial power, vis-à-vis other governmental branches and agencies, remain in the courts.

*id.* ¶ 46. The *Harrell* Court held "that the 'principle of check' requires that courts have an opportunity to review decisions of arbitrators in statutorily compelled arbitrations," clarifying that such review ensures "essential judicial power [is retained] within the judiciary." *Id.* ¶ 47 ("We use due-process analysis to determine whether the judicial review provided in the compulsory arbitration statute is adequate to reserve ultimate judicial power to the judiciary.").

{48}    The *Harrell* Court further approved delegations of quasi-judicial power to normally satisfy due process if the requisite "opportunity for judicial review of the administrative action" would permit "an aggrieved party to contest the fairness of the procedure used, the constitutionality of the substance of the regulatory statute and implementing rules and regulations, the correctness of the administrator's interpretation of the statute under which he operates, and whether or not his decision was arbitrary." *Id.* ¶ 49 (internal quotation marks and citation omitted). Under *Harrell*, to satisfy "due process, together with separation of powers considerations," would require "meaningful review" of an administrative decision by the court to "determine whether the litigant received a fair hearing before an impartial tribunal, whether the decision is supported by substantial evidence, and whether the decision

29

is in accordance with law." *Id.* ¶ 50. Importantly, this analysis in *Harrell* directs that meaningful judicial review of an attorney fee award in the WCA under the Cap would consist of "an adequate opportunity to review what has been done," *id.* ¶ 49 (internal quotation marks and citation omitted), not of replacing the quasi-judicial tribunal's attorney fee standard with our own.

{49}     To the extent *Irwin* presents a competing standard for judicial review of quasi-judicial decisions, we reject it. As we have discussed herein, *Irwin* is a nonbinding case in which the Minnesota Supreme Court held the state's amended workers' compensation statute violated the state constitution's separation-of-powers provision.[8] 599 N.W. 2d at 142. Under the challenged statute, a claimant is limited to a "'maximum permissible [attorney] fee' based exclusively on the dollar amount of the recovery," an amount "set without regard to factors that were previously considered in determining reasonable attorney fees." *Id.* at 139. Thus, the reviewing

---

[8]We note Minnesota's separation-of-powers provision is essentially the same as New Mexico's prior to 1986, and thus Minnesota does not operate under a meaningfully different constitutional standard:

> The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

Minn. Const. art. III, § 1.

30

court's "sole review power would be limited to determining whether the statutory formula had been properly applied by the compensation judge and the WCCA[, an independent executive reviewing agency], both members of the executive branch." *Id.* at 141.

{50}    We read *Irwin* to assert judicial review of attorney fees awarded in quasi-judicial contexts constitutionally must include the power to award compensation beyond a strict legislative cap if such an adjustment is necessary to effect a court's determination of reasonable compensation. "Legislation that prohibits this court from deviating from the precise statutory amount of awardable attorney fees impinges on the judiciary's inherent power to oversee attorneys[9] and attorney fees by depriving this court of a final, independent review of attorney fees." *Id.* at 141-42.

{51}    Whereas the standard in *Harrell* focuses on whether a claimant received fair process at the administrative level, *Irwin* appears to assert the Judiciary's absolute authority to regulate reasonable attorney fees even in quasi-judicial contexts. We

---

[9]The *Irwin* Court appears to conflate judicial review of attorney *fees* with a supreme court's authority over attorney *licensure and conduct*. Consistent with our discussion above, we observe that our inherent authority to regulate the practice of law includes our authority to license attorneys, prescribe the Rules of Professional Conduct, and discipline attorneys. An attorney operating within a quasi-judicial context is not insulated from this authority.

31

have rejected the latter view herein, and we additionally note the parties advance no argument against *Harrell*. For these reasons, we affirm *Harrell* as setting the standard for judicial review of administrative decisions in the workers' compensation context.

**E.     Certified Question 4: By Purporting to Regulate Attorney Fees Within the Courts for Appeals From the WCA, Section 52-1-54(I) Infringes This Court's Constitutional Power to Regulate the Practice of Law and Thus Is Nonbinding on Courts**

{52}     The fourth certified question asks whether Section 52-1-54(I) infringes upon this Court's constitutional power to regulate the practice of law. We hold that it does.

{53}     As we have established, regulation of attorney fees within the quasi-judicial context of the WCA falls within the Legislature's purview. Critically, however, Section 52-1-54(I) purports to govern "legal services costs" beyond that context, "including representation before . . . the courts on appeal." Notwithstanding the Cap's overreach into the Judiciary, we have also established that we will "revoke or amend a statutory provision [only] when the statutory provision conflicts with an existing court rule." *Blackmer*, 2005-NMSC-032, ¶ 5. Accordingly, we next determine whether application of the Cap within our courts conflicts with an existing court rule in a manner that requires revocation or amendment.

{54}     Rule 16-105 requires and governs reasonable attorney fees in the courts, including by providing a nonexclusive list of "factors to be considered in

32

determining the reasonableness of a fee." *See* Rule 16-105(A) ("A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses."). Courts analyzing a motion for attorney fees under Rule 16-105 determine whether those proposed fees fall within a range of reasonableness. *See, e.g.*, *N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 28, 460 P.3d 43 (ruling that rates charged by the attorneys there were "reasonable, appropriate and within the [justified] range for the work performed in this case" under Rule 16-105). However, irreconcilably, a reasonable attorney's fee for appellate work under that analysis may exceed the amount remaining under Section 52-1-54(I), resulting in a clear conflict between rule and statute.

{55}   This conflict is most clearly demonstrated in cases where an appeal follows an award of the maximum attorney fees under the Cap at the administrative level, such as in the underlying cases here. We accept the premise that an award of reasonable attorney fees under Rule 16-105 for such appellate work, if not executed pro bono, would be greater than a nullity, but the Cap would preclude any payment for such appellate work. Applied to Appellant Pena's case, for example, the Cap ostensibly disallows payment for work by his attorney pursuant to his challenge to the workers' compensation judge not applying the fee shifting provision of Section

52-1-54(F)(4). We presume without deciding that Rule 16-105 would require a different result, bringing that rule into direct conflict with Section 52-1-54(I).

{56} By attempting to govern attorney compensation within the Judiciary in conflict with our rules, the Legislature has infringed our constitutional authority to regulate all pleading, practice, and procedure in the courts. *Ammerman*, 1976-NMSC-031, ¶ 17 ("[S]tatutes purporting to regulate practice and procedure in the courts cannot be binding."). Consequently, Section 52-1-54(I) constitutes a clear violation of Article III, Section 1 of the New Mexico Constitution and thus "cannot be relied upon or enforced in judicial proceedings." *Ammerman*, 1976-NMSC-031, ¶ 17.

{57} We note the Court of Appeals' citations of the parties' arguments regarding "'necessary or proper'" authority, COA Order at 4, granted to the Legislature in the 1986 Amendment: "The [workers' compensation] statute shall provide for the type and organization of the body, the mode of appointment or election of its members and *such other matters as the legislature may deem necessary or proper*." (Emphasis added.) As cited by the Court of Appeals, the WCA as amicus curiae in the underlying proceedings suggests this language in the 1986 Amendment constitutes a "'broad enough'" grant of authority to sustain the reach of Section 52-1-54(I) into

the courts. COA Order at 4 & n.1. Because this position is presented in the Order of Certification and is contrary to our holding, we explain why it does not avail.

{58} Importantly, the 1986 Amendment did not alter or eliminate the express exception requirement of Article III, Section 1 of the New Mexico Constitution: "[N]o person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, *except as in this constitution otherwise expressly directed or permitted*." (Emphasis added.) In essence, then, the WCA's position would require us to read Article III, Section 1 of the New Mexico Constitution as self-contradictory, requiring an *express* exception for exercise of another branch's constitutional power while simultaneously allowing such exercise under *broad-enough* language. To be clear, we reject any suggestion that "'necessary or proper'" is *express* language. *See El Boletin Popular Publ'g. Co. v. Springer*, 1928-NMSC-017, ¶ 8, 33 N.M. 275, 265 P. 713 (characterizing "'necessary or proper'" language in a trust agreement as "broad").

{59} Appellants raised a similar objection to the lack of any express exception in their answer to the first certified question. There, however, that objection was misplaced in not recognizing the quasi-judicial nature of the WCA under *Wylie*: the WCA's quasi-judicial nature necessarily means the Legislature may regulate

35

pleading, practice, and procedure in that tribunal. Accordingly, no analysis was necessary in that context as to whether the statute and the rule conflicted. Here, since the statute and our rules conflict, an express exception would be necessary for Section 52-1-54(I) to apply in our inferior courts; the Amendment's "necessary and proper" language does not constitute such an exception; and we find no express exception elsewhere in our constitution allowing the Legislature to regulate attorney fees in the courts. Consequently, this position does not avail.

**F.     Our Holding as to Legislative Regulation of Attorney Fees Under Section 52-1-54(I) Being Nonbinding on Courts Is Applied with Selective Prospectivity**

{60}     The issue remains of whether our holding should apply retroactively or prospectively. "Retroactive application of a ruling in a civil case means that the new rule of law applies to all cases not finally determined, including the case in which the new rule is adopted, regardless of whether the events in question occurred after or before the ruling is announced." *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 49, 135 N.M. 375, 89 P.3d 47. "[I]t is within the inherent power of a state's highest court to give a decision prospective or retrospective application without offending constitutional principles." *Id.* ¶ 50 (internal quotation marks and citation omitted).

{61} This Court applies a presumption of retroactivity for the holding of a civil case announcing a new rule "[b]ecause of the compelling force of the desirability of treating similarly situated parties alike." *Beavers v. Johnson Controls World Servs.*, 1994-NMSC-094, ¶ 22, 118 N.M. 391, 881 P.2d 1376. "[T]his presumption may be overcome by a sufficiently weighty combination of several factors: (1) whether the decision to be applied prospectively establishes a new principle of law, (2) whether retroactive operation will advance or inhibit the operation of the new rule, and (3) whether retroactive application may produce substantial inequitable results." *Ullman v. Safeway Ins. Co.*, 2023-NMSC-030, ¶ 44, 539 P.3d 668 (internal quotation marks and citation omitted).

{62} Regarding the first factor, because the attorney fee cap in Section 52-1-54(I) has applied to workers' compensation appeals in the courts from 1987 until now, and no cases have presaged our decision, our holding "decid[es] an issue of first impression whose resolution was not clearly foreshadowed." *Beavers*, 1994-NMSC-094, ¶ 23 (internal quotation marks and citation omitted). Under *Beavers*, analysis of this factor also weighs reliance interests, "[t]he extent [of] which . . . can hardly be overemphasized," though such interests are "strongest in commercial settings." *Id.* ¶¶ 27-28. Both components are significant here: our holding is a matter of first impression, and it is reasonable to presume that the attorney fee cap has been a

relevant consideration in whether to bring an appeal for both claimants and employers. *See* § 52-1-54(J) (requiring, with two exceptions, "the payment of a claimant's attorney fees determined under this section shall be shared equally by the worker and the employer"). Accordingly, this factor weighs heavily toward overcoming the presumption of retroactivity.

{63}     Regarding the second factor, we must weigh whether retroactive operation will advance or inhibit the *inapplicability* of the attorney fee cap in appeals in the courts. Proper analysis of this factor considers the purpose of the new rule, *see Beavers*, 1994-NMSC-094, ¶ 34, which in this case is adherence to the separation-of-powers doctrine. This purpose weighs toward retroactivity, as continued violation of separation-of-powers principles should not be countenanced.

{64}     Regarding the third factor, whether retroactive application could produce substantial inequitable results, reliance is a significant consideration. "The greater the extent a potential defendant can be said to have relied on the law as it stood at the time he or she acted, the more inequitable it would be to apply the new rule retroactively." *Id.* ¶ 38. As we surmise above, both claimants and employers in pending cases may have relied on the attorney fee cap in deciding whether to pursue appeals from the WCA. We therefore weigh this factor in favor of prospective

application due to the long-standing and reasonable reliance of parties on Section 52-1-54(I).

{65} Weighing the first and third factors together against the second, we conclude the presumption of retroactivity is overcome and the new rule established by our holding—that Section 52-1-54(I) is nonbinding on the Judiciary's courts—should be applied prospectively. Following *Ullman* and *Beavers*, we further conclude our decision should be given selective prospective effect, "applying to the litigants in the case giving rise to the new rule and 'thereafter only to parties whose conduct occurs after the announcement.'" *Ullman*, 2023-NMSC-030, ¶ 50 (quoting *Beavers*, 1994-NMSC-094, ¶ 18 n.7).

**III. CONCLUSION**

{66} In conclusion, we answer the certified questions in turn as follows. First, our constitutional power to regulate the practice of law includes regulation of attorney fees generally but not within the WCA. We do not reach the second question. Third, under *Wylie*, none of this Court's authority to regulate the practice of law was transferred to the Legislature by the 1986 amendment to Article III, Section 1 of the New Mexico Constitution. Additionally, judicial review of attorney fee awards in the WCA has not been unconstitutionally curbed by Section 52-1-54(I), as such review remains governed by the standard in *Harrell*. And fourth, Section 52-1-54(I),

as a "statute[] purporting to regulate practice and procedure in the courts," violates Article III, Section 1 of the New Mexico Constitution and accordingly is nonbinding on the Judiciary's courts. *Ammerman*, 1976-NMSC-031, ¶ 15 (internal quotation marks and citation omitted). We apply our holding with selective prospectivity.

{67}     **IT IS SO ORDERED.**

 

                                                **C. SHANNON BACON, Justice**

**WE CONCUR:**

 

**DAVID K. THOMSON, Chief Justice**

 

**MICHAEL E. VIGIL, Justice**

 

**JULIE J. VARGAS, Justice**

 

**BRIANA H. ZAMORA, Justice**